Rosenberry, C. J.
 

 Before stating the question for decision, we will outline the statutory provisions involved in this proceeding. The State Board of Health consists of seven members. The president of the board is chosen by the board and the board also chooses a secretary, who is by the provisions of sec. 140.02, Stats., the state health officer. The State Board of Health has been in existence for many years.
 

 The legislature of 1919 enacted ch. 447, which by its title provided—
 

 “for supervision and control by the state board of health of water and ice supplies, water purification, sewage and refuse treatment and disposal and the pollution of streams; and for supervision of the maintenance, alteration, extension, construction and operation of systems and works relating thereto. . . .”
 

 This chapter was amended from time to time and became secs. 144.01 to 144.12, Stats., both inclusive. As amended, .sec. 144.03 (1) provided:
 

 
 *455
 
 “(1) The state board of health shall have general supervision and control over the waters of the state, drainage, water supply, water systems, sewage and refuse disposal, and the sanitary condition of streets, alleys, outhouses, and cesspools, in so far as their sanitary and physical condition affects, health or comfort.”
 

 By sec. 144.08, Stats., it is provided:
 

 “Except in the adoption of rules and regulations, the state health officer may act for the state board of health under this chapter.”
 

 The chapter referred to is ch. 447, Laws of 1919.
 

 By sec. 140.05 (3), Stats., it is provided:
 

 “The board shall have power to make and enforce such rules, regulations and orders governing the duties of all health officers and health boards, and as to any subject matter under its supervision, as shall be necessary to efficient administration and to protect health,” etc.
 

 By sec. 140.05 (5), Stats., the board was required to keep a full and complete record of proceedings before it on any investigation, and have all testimony taken by its stenographer.
 

 The legislature of 1927 enacted ch. 264 to create secs. 144.51 to 144.57, Stats., both inclusive. By this act there was created a Committee on Water Pollution to consist of the state chief engineer, a member of the railroad commission designated by the commission, a'conservation commissioner or one of his employees whom he may designate to represent the conservation commission, the state health officer or a member of the board of health designated by the board, and the state sanitary engineer or other engineer appointed by the State Board of Health.
 

 Sec. 144.53, Stats., provided as follows :
 

 . “It shall be the duty of the committee on water pollution and it shall have power, jurisdiction and authority:
 

 
 *456
 
 “(1) To exercise general supervision over the administration and enforcement of all laws relating to the pollution of ■the surface waters of the state. . . .
 

 “(4) To issue general orders, and adopt rules and regulations applicable throughout the state for the installation, use and operation of practicable and available systems, methods and means for controlling the pollution of the surface waters of the state through industrial wastes, refuse and other wastes. Such general orders, rules and regulations shall be issued only after an opportunity to be heard thereon shall have been afforded to interested parties and shall take effect as directed therein, which shall be not less than thirty days after publication in the official state paper.
 

 “(5) To issue special orders directing particular owners to secure such operating results toward the control of pollution of the surface waters as the committee may prescribe, within a specified time. If such results are not secured in the specified time, the committee may direct the owner to use or adopt designated systems, devices and methods for handling industrial wastes, refuse and other wastes within a specified time. . . .”
 

 On October 7, 1942, there was a hearing—
 

 “in the matter of the investigation by the state board of health and the committee on water pollution, concerning the disposal of pollutional wastes from plants of the Kenosha Brass Company and the American Brass Company, Kenosha, Wisconsin.”
 

 The appearances were as follows :
 

 State Committee on Water Pollution
 

 Mr. Adolph Kanneberg, Chairman
 

 Dr. C. A. Harper, Secretary
 

 Dr. Edward Schneberger, Member
 

 Mr. L. F. Warrick, Member
 

 State Board of Health
 

 Mr. O. J. Muegge.
 

 On the same day there was a meeting of the State Committee on Water Pollution, at which were present:
 

 
 *457
 
 Mr. Adolph Kanneberg, Chairman
 

 Mr. C. A. Halbert, Vice-Chairman
 

 Dr. C. A. Harper, Secretary
 

 Dr. Edward Schneberger, Member
 

 Mr. L. F. Warrick, Member.
 

 The minutes disclosed the following:
 

 “It was the consensus of opinion that sufficient opportunity had been extended to the American Brass Company and Ke-nosha Brass Company to develop a plan of procedure in taking care of their pollutional wastes. Upon the motion of Dr. Harper, duly seconded by Mr. Halbert, it was unanimously agreed that an order be issued calling upon the company officials to install such facilities as necessary to abate oil pollution and permit the discontinuance of all by-passing of domestic sewage that has been found necessary as a temporary expedient due to interference of plant wastes with the operation of the municipal sewage-treatment works. Copies of this order are to be sent to company and municipal officials.”
 

 On October 13, 1942, an order was issued in the form of a letter to the American Brass Company and the Kenosha Brass Company. After recitals as to hearing, etc., the order is as follows:
 

 “In accordance with chapter 144 of the 1941 Wisconsin Statutes and the general public health law, it is therefore ordered :
 

 “1. That the present method of disposing of wastes from your plants in Kenosha be so modified and improved as to permit all domestic sewage which has had to be by-passed to be properly disposed of through the municipal sewage-treatment works, and to eliminate all objectionable oil-pollution conditions referred to in previous reports and at the above-mentioned hearing, not later than June 1,-1943.
 

 “2.
 
 That plans adopted for these improvements be submitted to this department for approval according to section 144.04 of the Wisconsin statutes in time to permit completion' of the work as specified above, and not later than December 1, 1942.
 

 
 *458
 
 “3. That you at all times so maintain and operate your plants as to in no way create a nuisance and lake pollution.
 

 “Very truly yours,
 

 “Committee on Water Pollution
 

 (Signed) “Adolph Karineberg, Chairman
 

 (Signed) “C. A. Harper, M.D., Secretary and State Health Officer
 

 “LFWaf Wisconsin State Board of Health.”
 

 The American Brass Company and the Kenosha Brass Company moved for a rehearing and upon rehearing the order was confirmed.
 

 With respect to review of orders made by the State Board of ITealth under secs. 144.01 to 144.12, Stats. 1941, Sec. 144.10 provides:
 

 “An owner may elect to arbitrate or may bring action against the board in the circuit court for Dane county to^ determine the necessity for and reasonableness of any order of the board. The provisions of subsection (3) of section 144.07 shall apply, including affirmation or modification, but excepting the twenty-day limitation. Taxable costs shall be in the discretion of the court.”
 

 Sec. 144.07 (3), Stats. 1941, relates to' orders made by the State Board of Health respecting sewerage systems, or sewage or refuse disposal plants. It provides :
 

 “If the governing body of any municipality deem the charge unreasonable, it may by resolution within twenty days after the filing of the report with its clerk,
 

 “(a) Submit to arbitration by three reputable and experienced engineers,” etc.
 

 “(b) Commence an action in the circuit court of the county of the municipality furnishing the service to determine the compensation,” etc.
 

 (The remainder of the subsection prescribes the procedure.)
 

 
 *459
 
 Orders made by the Committee on Water Pollution under secs. 144.51 to 144.57, Stats. 1941, may be reviewed under sec. 144.56:
 

 “Any owner or other person in interest may secure a review of the necessity for and reasonableness of any general or special order of the committee on water pollution in the following manner:
 

 “(1) They shall first file with the committee a verified petition setting forth specifically the modification or change desired in such order. Upon receipt of such a petition the committee shall order a public hearing thereon and make such further investigations as it shall deem advisable. Not more than thirty days after the filing of the petition the committee shall affirm, repeal or change the order in question.
 

 “(2) If dissatisfied with the determination made by the committee upon any such petition, any party in interest may commence an action in the circuit court of Dane county against the committee on water pollution, which shall be tried and determined as other civil actions. From any judgment in such action either party may appeal to the supreme court within thirty days.”
 

 Apparently the plaintiffs were unable to determine whether the order in question was an order of the Committee on Water Pollution or an order of the State Board of Health and tried to apply secs. 144.10 and ,144.56, Stats. The trial was had in the circuit court as already stated. The court found:
 

 “That the order made by the defendants Wisconsin State Board of Health and Committee on Water Pollution sought to be vacated by the commencement of the above-entitled action is not shown by the evidence herein to be either unreasonable or unnecessary”—
 

 and judgment was entered accordingly affirming the order and dismissing the plaintiffs’ amended complaint.
 

 The only question raised or considered in the court below was the question of the necessity and reasonableness of the
 
 *460
 
 order. The principal matter considered was whether the plan upon which the sewage-disposal plant of the city of Kenosha was constructed was a proper plan. It appears that an effluent is discharged from plaintiffs’ plants which is impregnated with oil. Sewage thus impregnated cannot be successfully treated in the sewage-disposal plant of the city of Kenosha, and on behalf of the plaintiffs it is claimed that an alternative plan should have been adopted by the city which would successfully treat such sewage, and that because such alternative plan was not adopted, the order complained of was unnecessary and unreasonable.
 

 We do not find it necessary to consider the question litigated in the court below for the following reasons : No proposition of law is better established than that administrative agencies have only such powers as are expressly granted to them or necessarily implied and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds.
 
 Monroe v. Railroad Comm.
 
 (1919) 170 Wis. 180, 174 N. W. 450;
 
 Wisconsin Telephone Co. v. Public Service Comm.
 
 (1939) 232 Wis. 274, 287 N. W. 122, 287 N. W. 593.
 

 Turning now to secs. 144.01 to 144.12, Stats., the power of the state board of health is to have—
 

 “general supervision and control over the waters of the state, drainage, water supply, water systems, sewage and refuse disposal, and the sanitary condition of streets, alleys, outhouses, and cesspools, in so far as their sanitary and physical condition affects health or comfort.” (Sec. 144.03 (1).)
 

 The power thus conferred is clearly a power to be exercised by the State Board of Health for the purpose of promoting the health and comfort of the people. The sections contain elaborate provisions relating to the construction of sewage systems and refuse-disposal plants.
 

 
 *461
 
 On the other hand, the Committee on Water Pollution has power to exercise general supervision over the administration and enforcement of all laws relating to pollution of the surface waters of the state and to issue general and special orders for controlling the pollution of the surface waters as defined in the act. The evident legislative purpose in the enactment of secs. 144.51 to 144.57, Stats., was to create an administrative agency with special authority to deal with the pollution of surface waters. That committee is not authorized to do anything else nor is the Committee on Water Pollution required in the exercise of its authority to take into consideration matters of public health and comfort. This is made perfectly plain by the provisions of sec. 144.54, which provides:
 

 “Nothing in sections 144.51 to 144.57 shall be construed to limit or modify in any manner the powers and duties of the state board of health under sections 144.01 to 144.12, or to interfere with its power to select, employ and direct the sanitary engineer and all other employees, of its bureau of sanitary engineering.”
 

 The legislature took great pains to preserve intact the powers of the State Board of Health relating to matters of health and comfort.
 

 The order made in this case, as appears upon its face, is a joint order and this despite the fact that orders made by the State Board of Health are subject to a different kind of a review than are orders made by the Committee on Water Pollution. For example, there is no provision for arbitration of orders made by the Committee on Water Pollution as is provided in secs. 144.07 and 144.10, Stats., for orders made by the State Board of Health. Part 1 of the joint order relates to pollution of surface waters and the plaintiffs weré required to modify their plant so as to eliminate all objectionable oil pollution. Curiously enough, part 2 of the order requires
 
 *462
 
 that when these plans for eliminating pollution are made, they are to be submitted to the State Board of Health as provided in sec. 144.04. Nowhere in the statute is the State Board of Health given any power to review or revise or approve or disapprove plans ordered to be' made by the Committee on Water Pollution. Sec. 144.04 provides :
 

 “Every owner within the time prescribed by the board, shall file with the board a certified copy of complete plans. . . .”
 

 The plans referred to in sec. 144.04, Stats., are the plans ordered by the State Board of Health in the exercise of its powers conferred by sec. 144.03.
 

 We find no warrant in the statutes for the procedure adopted by the State Board of Health and the Committee on Water Pollution in this case. These agencies are two separate and distinct bodies exercising power over separate and distinct matters.
 

 The only possible ground upon which it can be supposed that those bodies might proceed jointly is that an act of the legislature adopted in 1919 is to be found in the same chapter with an act of the legislature adopted in 1927 and that despite the fact as already pointed out that sec. 144.54, Stats., provides that the powers conferred upon the Committee on Water Pollution shall in no way limit or modify the powers conferred, upon the State Board of Health by the first twelve sections of the chapter. The mere fact that the power conferred upon the Committee on Water Pollution to a certain extent complements the powers conferred upon the State Board of Plealtli by secs. 144.01 to' 144.12, does not warrant or imply any authority for the State Board of Health and the Committee on Water Pollution to act jointly.
 

 If all administrative agencies having jurisdiction over surface, waters can join with the State Board of Health in exercising their statutory powers, then the public service commis
 
 *463
 
 sion might be joined. (Ch. 31, Stats. 1941.) In that event the method of reviewing orders prescribed by secs. 196.41 to 196.47 might apply. Sec. 31.14 (14).
 

 If part 1 of the order stood alone it might possibly be considered as an order of the Committee on Water Pollution but part 2 of the order relates solely to a power to be exercised by the State Board of Health and to make it doubly sure that the order was joint, part 3 of the order requires the plaintiffs to maintain and operate their plants so as not to- create a nuisance or lake pollution which is partly within the jurisdiction of the State Board of Health and partly within the Committee on Water Pollution. The powers exercised by the State Board of Health and the Committee on Water Pollution under ch. 144, Stats., are legislative in nature. For many years legislatures were denied the right to delegate their powers as has been done in these two- acts. In the beginning such powers were delegated and the exercise thereof minutely prescribed. As time has gone on more and more power has been delegated by legislative bodies and the restrictions upon their exercise have been relaxed. However, if there is to- be any safety for the rights of citizens under our constitution and laws, administrative agencies exercising legislative or judicial power, or both powers in combination, must be held to act within the limits prescribed by the statute creating them. They have no general legislative or general judicial powers. They have only those specifically granted or necessarily implied. Where two bodies join as the State Board of Health and the Committee on Water Pollution joined in this case no one is able to say which authority is exercised or whether the authority was exercised by one or the other or whether the powers would have been exercised at all if the proceeding had been separate instead of joint. It may be a great convenience to the State Board of Health and the Committee on Water Pollution to operate together inasmuch as they exercise comple
 
 *464
 
 mentary powers. If that is true, then the statute should so provide. In that event, some revision and amendment in other respects will be necessary.
 

 The argument addressed to the court in support of the position of the defendants was based upon the theory that it was difficult to tell which body had jurisdiction and that the circumstances might be such that the public interest would be advanced if the powers were exercised jointly. That is an argument which should be addressed to the legislature and not to the court. That is especially true in this case in view of the provisions of sec. 144.54, Stats., already referred to.
 

 Some reliance is placed upon
 
 State ex rel. Martin v. Juneau
 
 (1941), 238 Wis. 564, 300 N. W. 187. That was an action brought by the attorney general to enforce an order requiring the city of Juneau to erect a sewage-treatment system. That too was a joint order of the State Board of Health and the State Committee on Water Pollution. The city of Juneau answered setting up certain matters by way of defense. To this answer the plaintiff demurred. The principal contentions of the defendant were that the statute was vague, indefinite, and incapable of enforcement; that powers conferred by the statute upon the State Board of Health and the Committee on Water Pollution constitute an unlawful delegation of legislative power; that the powers given by statute constitute an unlawful delegation of judicial power and that the statute was unreasonable, arbitrary, and oppressive. The questions raised in this case were not raised or considered in that case.
 

 That was an action in equity, not one to review the order under the statute, and it was held, (1) that the defendant was foreclosed from raising any question except the validity of ch. 144, Stats., and (2) whether the State Board of Health and the State Committee on Water Pollution had acted within the powers conferred upon them by statute. Moreover, in that case, the order complained of was issued in the exercise
 
 *465
 
 of the powers contained in secs. 144.01 to 144.12. While part 3 of the order in that case directed the sewage-treatment system to be so operated and maintained as to prevent objectionable pollution, the considerations for the making of part 3 were those affecting public health and comfort.
 

 There being no authority in the statutes for the procedure adopted in this case, the judgment of the court below must be reversed and the order complained of be vacated and set aside.
 

 By the Court.
 
 — The judgment appealed from is reversed, and cause remanded to the trial court to set aside and vacate the order complained of.