### BAY CREST UTILITY CO. v. HILLSBOROUGH COUNTY COMMISSION.
No. 210342.

Circuit Court, Hillsborough County.

November 14, 1972 and January 16, 1973.

John R. Bush of Macfarlane, Ferguson, Allison & Kelly, Tampa, for Bay Crest Utility Co.

John W. McWhirter, Jr. of Cason, McWhirter, Henderson & Stokes, Tampa, for the Hillsborough County Commission.

## VICTOR O. WEHLE, Circuit Judge.

*Memorandum of decision after hearing, November 14, 1972:* In this certiorari proceeding commenced in this court on July 28, 1972 the petitioner, Bay Crest Utility Company, seeks an order quashing the respondents' order dated June 28, 1972 revoking the petitioner's franchise to operate and maintain a sewer system within the geographical area described in the franchise agreement. Associated or companion cases involving the same matters as discussed herein include the petitioner's petition for writ of mandamus, styled State of Florida, ex rel. Bay Crest Utility Company v. Ellsworth G. Simmons, et al., filed in this court as number 210341. The proceedings involving the parties were actually commenced in this court when the petitioner filed its complaint for declaratory judgment and temporary and permanent injunctions and other relief in the case styled Bay Crest Utility Company v. Ellsworth G. Simmons, et al., case number 209965 which is pending in this court. The gravamen of that suit is a request by the petitioner for entry of an order precluding the respondents from taking the petitioner's property without due process of law. In that injunction suit, the respondents, after the order of revocation on June 28, 1972 discussed above, filed a counterclaim seeking the appointment of a receiver to operate the petitioner's sewage treatment facility, the respondents having revoked the petitioner's franchise to operate the same. This certiorari proceeding was consolidated by order of this court, July 17, 1972 with the suit for injunction and counterclaim for the appointment of a receiver. Moreover, the suit for issuance of a writ of mandamus was likewise consolidated with the suit for injunction. All cases involving these parties are thus pending before the court.

For the reasons stated below, the court holds that the petitioner is entitled to this court's issuance of a writ of certiorari to the respondents, quashing the order of revocation dated June 28, 1972 and, in addition, is entitled to the issuance by this court of a writ of mandamus quashing a certain "Notice to Correct Violation" served upon the petitioner by the director of the Hillsborough County Pollution Control Commission on December 14, 1970. Finally, in view of the fact that the petition for writ of certiorari and mandamus will be granted, the suit for injunction and counterclaim for appointment of a receiver is moot and separate orders will issue thereon.

### Jurisdiction

Jurisdiction is based upon the provisions of Ch. 59-1352, §7, Special Acts of Florida (1959), which provide that any person, firm or corporation aggrieved by any act of the county commissioners with regard to the issuance of or revocation of a franchise

to operate a sewage treatment plant shall have an appeal to this court. The petitioner duly filed its appeal within the required fifteen days and upon suggestion to the court, an order was entered allowing the petitioner until July 28, 1972 within which to file its petition for a writ of certiorari in view of Rule 4.5(1), Florida Appellate Rules. See also Arvida Corporation v. City of Sarasota, 213 So.2d 756, 761 (Fla. App. 2d 1968). The petition for writ of certiorari was timely filed in accordance with law.

### Hearings and record

Pursuant to stipulation for preparation of the record and an order entered thereon, the petitioner filed 86 record documents which comprise the record of this cause and an index thereof is on file. The petition for a writ of certiorari to the board of county commissioners sets forth the critical facts and there is attached to the petition copies of the following Florida statutes — Ch. 59-1352, Special Acts of Florida (1959); Ch. 67-1504, Special Acts of Florida (1967) and amendments thereto; the Hillsborough County Pollution Control Commission Rules and Regulations adopted pursuant to Ch. 67-1504; and Florida Statutes, Ch. 403.

Florida Statutes, Ch. 403 is known as the Florida Air and Water Pollution Control Act. Its stated legislative purpose is to conserve the waters of the state and to protect, maintain, and improve the quality thereof for public water supplies, and other purposes. It establishes a Pollution Control Board composed of five citizens appointed by the Governor, subject to confirmation by the Senate. The Act vests the commission with broad powers in dealing with air and water pollution problems. Section 403.121 is captioned *"Enforcement; procedure"* and provides in part —

(1) If the commission has reason to believe a violation of any provision of this act has occurred, it shall cause written notice to be served upon the alleged violator or violators. The notice shall specify the provision of the law, rule or regulation alleged to be violated, and the facts alleged to constitute a violation thereof, and may include an order that corrective action be taken within a reasonable time. No such order shall become effective except after reasonable notice ***; except that injunctive relief may be sought as provided under §403.131.

In addition, the legislature, in its wisdom, considered it appropriate to establish in Hillsborough County a pollution control law which roughly parallels the state law, Ch. 403. Thus, Ch. 67-1504 is an Act creating and establishing the Hillsborough County Pollution Control Commission which is comprised of the members of the Hillsborough County Commission, the respondents herein. By §7 there is established the office of "Pollution Control Director" who shall be appointed by the Hillsborough County Health Department. Section 15 of Ch. 67-1504 provides as follows —

*Violations; notice; citations.* — Whenever evidence has been obtained or received establishing that a violation of this act or any rules or regulations adopted pursuant to this act has been committed, the pollution control director shall issue a notice to correct the violation or a citation to cease the violation, and cause the same to be served upon the violator by personal service or certified mail or by posting a copy in a conspicuous place on the premises of the facility causing the violation. Such notice or citation shall briefly set forth the general nature of the violation and specify a reasonable time within which the violation shall be rectified or stopped, commensurate with the circumstances. If the violation is not corrected within the time so specified, or the violation stopped, or reasonable steps taken to rectify the violation, the pollution control director shall have the power and authority to issue an order requiring the violator to cease or suspend operation of the facility causing the violation until the violation has been corrected, or the pollution control director may institute action to compel compliance with the provisions of such notice or citation, and/or initiate proceedings to prosecute the violator for violation of this act.

It will be noted that for all substantive purposes, §403.121 and §15 of Ch. 67-1504 are identical.

### Findings of fact

Based upon the entire record, the court makes the following findings of fact —

### (A) Chronological sequence of events

By three separate documents dated March 11, 1960, January 28, 1963 and April 30, 1965, respondents granted to the petitioner its franchise to operate a sewer treatment plant in the Bay Crest area of Hillsborough County. The approximate location of the sewage treatment plant is the corner of Hillsborough Avenue and Memorial Boulevard, Tampa, and the housing development areas surround and are in close proximity to the plant. (RD 1, 2, 3) Initially the petitioner expended in excess of $800,000 for the sewage treatment plant and has operated same to date. This finding to the effect that the petitioner expended said sum of money for its sewage treatment plant is necessarily limited to the proposition that the proprietary interest of the petitioner must be weighed against the public interest involving the abatement of pollution of our habitat, and said finding shall have no bearing upon the question of inverse condemnation which is to be later considered by the court.

The Hillsborough County Pollution Control Commission came into being in 1967. See Ch. 67-1504, supra.

During the year 1970, or perhaps earlier, the respondents became aware of the need for improved sewage treatment facilities for the entire northwest section of Hillsborough County. This was perhaps

prompted by the fact that the federal government had enacted legislation which provided matching funds for the improvement of the environment with regard to sewage treatment facilities. In this regard, on or before August 14, 1970, the respondents considered forming a non-profit corporation to acquire the petitioner's facility and inquired of the petitioner if it would be willing to sell its system to the county. (RD 5)

On December 14, 1970, the director of the Hillsborough County Pollution Control Commission served upon the petitioner his "Notice to Correct Violation" premised upon his staff's findings that over a period from August 4, 1970 through August 25, 1970 the petitioner was in violation of §§14(1) and 17 of the Act in that it was causing coliform bacteria levels in excess of the maximum allowed by the rules and regulations of the commission. The notice directed the petitioner to submit a plan for the correction of the violation within a period of ninety days and to permit no further connections or operate new connections adding to total plant volume. The notice is probably deficient in at least two respects — first, it does not specify a reasonable time within which the violation shall be rectified or stopped, commensurate with the circumstances, and second, it is delinquent in that it was not issued by the director until more than four months after the alleged violation was noticed.

On January 13, 1971 the respondents formally decided to proceed to acquire the petitioner's facilities and other sewage treatment owners' facilities by negotiation or by eminent domain. (RD 10)

In March, 1971, the state legislature enacted §403.086, Fla. Stats. The Act mandates, for purposes herein, that petitioner shall provide for secondary waste treatment by January 1, 1973, and, in addition thereto, advanced waste treatment as deemed necessary and ordered by the department of pollution control. Failure to conform by that date is punishable by civil penalties. Morever, the Act provides that neither the division of health nor the department of health and rehabilitative services, nor any other state agency, county, special district or municipality shall approve construction of any facilities for sanitary sewage disposal which do not provide for secondary waste treatment and, in addition thereto, advanced waste treatment as deemed necessary and ordered by the department of pollution control.

On April 15, 1971 the petitioner presented its application to the board of health for the approval of plans for the construction of improved sewage treatment facilities at a cost of $150,000. (RD 22) These plans called for the construction of secondary waste treatment facilities. At that time, and for the period commencing in 1960 when the first franchise was granted, the petitioner had

operated what is known as an "old trickling filter plant along with a reasonably up-to-date aerobic plant." When this plant was constructed in 1960, it was an up-to-date plant built in accordance with the then existing "state of the art." The record indicates that as of that time the state of Florida would not permit anything other than an aerobic plant to be constructed. Expert testimony for the respondents indicated that the most expedient method for bringing the plant up to date would be to install a tertiary or secondary waste treatment facility which would require a construction and planning time of approximately six to seven months. The secondary waste treatment concept is totally different from that which the petitioner had been operating in accordance with the law for several years prior to the passage of §403.086. (RD 84, pp. 111-143) The state board of health approved the proposed plant modification by the petitioner but the respondents maintained that they had adopted an overall plan for sewage treatment which did not envisage the continued maintenance by the petitioner of its plant which serviced only a small area of the northwest Hillsborough County area. (RD 34)

As of August 12, 1971, the notice to correct violation, supra, was extant and the respondents had either ignored or declined to take action upon the petitioner's notice of appeal properly taken from that notice. (RD 9) See §9, Ch. 67-1504. On August 12, 1971, the petitioner inquired of the respondents what they intended to do, taking into consideration the fact that the petitioner was considering an expenditure of $150,000 to up-date its facility. (RD 34) The respondents replied on August 16, 1971 advising that they hoped that they could make a decision in the immediate future because either the respondents or the petitioner should cure the pollution problem. (RD 36)

On August 25, 1971, the pollution control director, Mr. Roger Stewart, advised the Florida Department of Pollution Control that the petitioner was then currently under "enforcement action" by his department, the basis of said enforcement action being the long-term and long-standing pollution of the residential canals within the development which is served by the Bay Crest Utility Company and recommended against the granting of a permit to upgrade the facilities in accordance with the plans presented on April 15, 1971. (RD 40) During this time, the respondents were informally discussing or negotiating their purchase of the petitioner's sewer treatment facilities. In that regard, the county's engineers had stated that their evaluation of the petitioner's facilities was $729,756. (RD 80) As will be shown infra, the respondents had obtained a second appraisal from an appraiser who evaluated the facility at approximately $260,000. (RD 70)

Two days prior to the recommendation against allowing the petitioner to upgrade its facilities, supra, the respondents had served upon the petitioner their order to show cause why petitioner's sewage franchise should not be revoked in view of the fact that "eight months have transpired since the citation has been issued," it appearing that "no viable progress has been made in curing the [alleged] defects . . . " (RD 39) On November 10, 1971, the respondents dismissed that show cause order for the reason that they intended to acquire petitioner's facilities and did not want to increase the county's cost of acquisition. (RD 52) The respondents' plans to acquire the petitioner's facilities continued during this time frame. (RD 42)

On October 18, 1971 the state department of pollution control, citing the alleged "enforcement action" alluded to by Mr. Stewart, supra, denied the petitioner's application for a permit to construct the upgraded facility. (RD 46)

On November 29, 1971 the department of pollution control inquired of the petitioner whether or not it would submit certain requested information pertaining to the application for a permit to construct. (RD 53) On December 10, 1971 the petitioner responded, advising that the project had been delayed due to pending negotiations with the respondents as to the eventual acquisition of the sanitary sewer facility, noting that negotiations would probably commence within a short time. (RD54) On December 14, 1971, the respondents' county engineer advised that after several meetings with the pollution control director and several other persons, including one of the respondents, the county would immediately begin phasing out the service of the petitioner's plant and connect it to another plant. (RD 57) The record is devoid of any constitutional or statutory authority for the respondents' "phasing out" of the petitioner's facilities without the institution of eminent domain proceedings.

In an effort to ascertain what "standards" the state of Florida had enacted pursuant to Fla. Stat. §403.086, the petitioner, on April 11, 1972, corresponded with the State of Florida Department of Pollution Control (RD 68) which responded that the petitioner should contact the Tampa Bay Regional Planning Council (RD 69) whereupon petitioner did so (RD 73) and was advised that there is no way in which the Tampa Bay Regional Planning Council could assist the petitioner for the reason that there were no standards. (RD 72) In addition, the State of Florida Department of Pollution Control advised on April 26, 1972 that there were no guidelines available and that perhaps the petitioner should obtain same from the federal environmental protection agency. (RD 71) The petitioner's correspondence to that agency did not receive a

response. (RD 72) From the petitioner's viewpoint, it preferred to comply with the requirements for secondary waste treatment set forth in Fla. Stat. §403.086 rather than institute "stop-gap" expenditures and construction in an effort to bring its antiquated 1960 vintage plant into compliance with the notice to correct, supra. (RD 84, pp. 111-143) Moreover, no action had been taken on its appeal of the notice to correct and the petitioner was at a loss to understand its position.

On April 12, 1972, the respondents, in formal session as the board of county commissioners, were advised by their attorney that petitioner had, by letter dated April 11, 1972 notified them that it was no longer interested in pursuing negotiations for the purchase of the petitioner's sewer system. Counsel advised various steps, including eminent domain, that could be utilized or taken to acquire the facilities. The respondents considered the facts that (a) the county would receive federal grants-in-aid and (b) if the county owned the systems, new customer contributions would go to the county rather than to private enterprise. During this session, the respondents considered the fact that one of their appraisers had appraised the petitioner's facility at less than $300,000. (RD 70) However, there was no discussion of their engineers' appraisal of $729,756. (RD 70)

On April 19, 1972 respondents' counsel wrote to the petitioner, demanding, among other things —

> "On or before May 3, 1972, the County requires that you submit to it your anticipated plans for complying with the pollution control standards established for January 1, 1973."
> (RD 70, p. 2, RD 76)

Petitioner's counsel answered that letter by his of May 15, 1972 wherein he completely outlined what had transpired between the parties, including the early attempt by the petitioner to upgrade its facility which was denied. (RD 76) In addition, the respondents proposed that the petitioner discontinue its sewage facility and connect its pipes to the county system upon payment of sixty cents per gallon per daily flow plus a "reasonable service charge." On the basis of a 300,000 gallon flow (which was the operating capacity of the petitioner), the initial cost would be $180,000 to the petitioner plus the "reasonable service charge." All of such costs would be in addition to the existing investment. (RD 70)

On May 22, 1972 the respondents, through their counsel, served upon the petitioner a second order to show cause (the first one was served on August 23, 1971, supra) in the form of a notice of hearing to "consider continuing charges that [petitioner] had violated the terms and conditions of the sewer franchise in that it has failed to

render adequate service" in that it is "discharging into the waters of Hillsborough County organic matter tending to cause a polluted condition in violation of the Hillsborough County Pollution Control Act, Ch. 67-1504, Laws of Florida, Special Act of 1967, as amended, and §403.161, Fla. Stat., which make it unlawful to cause pollution in the waters of the state of Florida by failing to comply with the quality standards established by the Florida Air and Water Pollution Control Commission and the Hillsborough County Environmental Protection Agency." (RD 83) There was no indication that either the Florida·Air and Water Pollution Control Board or the Hillsborough County Pollution Control Commission had issued notices or citations in accordance with Fla. Stat. §403.121, or Ch. 67-1504, §15, respectively. The court finds that, by absence thereof in the record or argument by counsel, no such citations were issued by the state or county agencies.

On May 26, 1972 the respondents found the petitioner guilty of violating the franchise terms in that it had not met the requirements of the pollution control quality standards. (RD 84, pp. 156-157) The respondents notified the petitioner that if the violation was not cured within 30 days, the franchise would "stand revoked." (RD 84, p. 157)

On June 21, 1972 the petitioner requested an extension of time for purposes of compliance for the reason that a hurricane had delayed progress of the work. The respondents denied the request. (RD 85, pp. 3, 7-8, 13, 23)

On June 28, 1972, the respondents voted to revoke the petitioner's franchise. (RD 86, p. 60)

### (B) *Evidence in support of revocation order*

The director of the pollution control commission, Mr. Stewart, testified to and presented evidence supporting the charge that the petitioner was violating the pollution laws and rules and regulations adopted pursuant thereto. However, his testimony established that (a) he did not take the samples of the allegedly polluted water, (b) he did not analyze the samples, (c) he did not supervise the taking or analyzing the samples, and (d) he did not know whether or not the samples taken related to sewage effluent from petitioner's sewage treatment plan. (RD 86, pp. 30-38) Thereupon, petitioner moved to strike all of his testimony on the ground that the same constituted hearsay and was not based on personal knowledge. The respondents overruled the motion. (RD 86, p. 38)

Mr. Dan A. Williamson, an official of the state of Florida, testified that the petitioner's permit to operate the plant had expired. However, this subject was neither set forth in the May 22, 1972

notice of hearing, nor is there any indication that petitioner was otherwise apprised of the fact that such would constitute a subject of the hearing. Petitioner's motion to strike his testimony was overruled. (RD 86, pp. 39-47) It is noteworthy that on cross-examination, Mr. Williamson stated that no other person or agency has a permit to operate the petitioner's plant and that approximately sixty days would be required in order to obtain a permit from the state department of pollution control. (RD 86, pp. 47-48)

(C) *Respondents' authority vel non to proceed pursuant to Chapter 67-1504 and Fla. Stat. Chapter 403*

As suggested above, the Hillsborough County Pollution Control Commission, established by Ch. 67-1504, is a distinct entity and for purposes of procedure and action is totally divorced from and separate from the respondents sitting as the Hillsborough County Commission.

The provisions of Fla. Stat., Ch. 403 do not authorize the respondents to take enforcement action under that law which explicitly provides that it shall be enforced by the Department of Pollution Control, State of Florida.

The provisions of Ch. 67-1504 do not authorize the respondents to enforce the anti-pollution measures contained therein. Enforcement of said law is vested solely in the Hillsborough County Pollution Control Commission, acting through its director.

(D) *The December 14, 1970 notice of hearing and appeal thereon*

The Hillsborough County Pollution Control Commission and its director have ignored and taken no action on the appeal provided by Ch. 67-1504, §9. Thus, the petitioner has been denied the right to make a record and in the event of an adverse decision has been denied the right to appeal to the circuit court. There is no showing in the record of any excuse for the commission's dereliction in this regard and no explanation has been offered.

*Conclusions of law*

The court has jurisdiction over the subject matter and the parties.

The December 14, 1970 notice to correct violation is void and of no effect in that its author failed to comply with Ch. 67-1504, §15. Moreover, the respondents ignored petitioner's appeal which is a violation of Ch. 67-1504, §9.

The revocation order is invalid and must be quashed for the following reasons —

(a) The actions of the respondents as shown by the record were arbitrary and capricious.

(b) The testimony taken by the respondents at the June 28, 1972 revocation hearing was of no valid effect for the reasons (1) that it constituted uncorroborated hearsay and (2) went beyond the scope of the hearing notice.

The petitioner is entitled under state law to proceed to upgrade its facility as it attempted to do in April, 1971.

## Opinion

The critical threshold consideration of the parties and the court is the abatement of pollution. Of equal importance is the petitioner's proprietary interest and investment which is substantial. On the one hand, the court must insure that businessmen and their firms comply with the latest developments for the abatement of pollution. On the other hand, concepts of due process and protection of the rights of businessmen, without whose efforts large housing developments with necessary sewer treatment facilities would not have been possible during the last fifteen years, must be observed. It is apposite to note at the outset that although, in 1960, the respondents were perfectly willing to grant a 25-year exclusive franchise to the petitioner for the obvious reason that Hillsborough County did not have available sewage treatment facilities, they have rather precipitously taken the position that the contractual and franchise rights of the petitioner should fall before the respondents' more recent desires to acquire the petitioner's facilities, close down its plant, and utilize its underground sewer lines to connect into a unified system. In this regard, the petitioner has been most willing to oblige and, during oral argument, its counsel stated that petitioner was willing to have its facilities taken by eminent domain which is the established method of acquiring facilities when the state or a subdivision thereof requires them. The court would fail to recognize the important place of concepts of due process, including the procedural device of eminent domain, in the pantheon of our liberties were the court to hold that by mere whim the respondents would be entitled to play fast and loose with the petitioner's proprietary rights. The court holds that the respondents have acted arbitrarily and capriciously and that they have failed to accord to the petitioner procedural due process of law.

## Procedural matters

There are certain well established principles which govern the activities of the respondents and inasmuch as they are fundamental and easily disposed of, the court will consider them at the outset. The respondents constitute an administrative board for county

affairs. Fla. Const. Art. VIII, §1(a); Whitney v. Hillsborough County, 127 So. 486, 492 (Fla. 1930). Accordingly, concepts of administrative law govern the decisions and actions of the respondents.

Administrative authorities are creatures of statute and have only such powers as the statute confers on them. Their powers must be exercised in accordance with the statute bestowing such powers, and they can act only in the mode prescribed by statute. There must be some basis in a statute for the exercise of jurisdiction and power involved in making an order. If there is a reasonable doubt as to the lawful existence of the particular power that is being exercised, the further exercise of the power should be arrested. Edgerton v. International Company, 89 So.2d 488 (Fla. 1956); Kirk v. Publix Supermarkets, 185 So.2d 161 (Fla. 1966); F.I.C. v. National Trucking Company, 107 So.2d 397 (Fla. App. 1st 1958); Keating v. State of Florida, 167 So.2d 46 (Fla. App. 1st 1964); St. Regis Paper Company v. State of Florida, Acting by and through the Florida Air and Water Pollution Control Commission, 237 So. 2d 797 (Fla. App. 1st 1970), mod'd. on cert. 257 So.2d 253 (Fla. 1971). See also American Brass Co. v. Wisconsin State Board of Health, 245 Wis. 440, 15 N.W. 2d 27 (1954); Ford v. Wisconsin Real Estate Examining Board, 48 Wis. 2d 91, 179 N. W. 2d, 786 (1970); State v. Schubert, 52 Wis. 2d 351, 190 N.W. 2d, 529 (1971). Thus, the respondents, administrative officers for a political subdivision, Hillsborough County, are not authorized to undertake the enforcement of statutes and laws which do not specifically delegate to the respondents the power to so act. Thus, the May 22, 1972 notice of hearing is invalid in its purported purpose of notifying the petitioner that the respondents would consider the petitioner's alleged violations of Fla. Stats. §403 and Ch. 67-1504.

With regard to franchise agreements such as those herein (RD 1, 2, 3), the respondents are delimited in their powers and activities to those delegated powers specifically set forth in Chapter 59-1352. That statute, a special act relating to Hillsborough County, does not specifically or by necessary implication accord to the respondents the power to enforce pollution laws. The legislature has established separate modes for the execution of franchise agreements on the one hand and pollution abatement on the other. When the legislature provides that an administrative power should be exercised in a certain way, such prescription precludes the doing of it in another way. Kirk v. Publix Supermarkets, supra. Counsel for the respondents argued strenuously during oral argument that (1) the respondents possess sovereign power to revoke the franchise agreements, the problem of pollution having become an overriding and supervening issue, and (2) respondents possess the implied power to

enforce pollution laws and are thus enabled to revoke the sewer treatment franchise agreement. Counsel is incorrect on both counts. As discussed above, counties possess no inherent powers. They are empowered to exercise only such authority as may be delegated to them under the constitution or by statutory grants. Crandon v. Hazlett, 26 So.2d 638 (Fla. 1946); Gessner v. Del-Air Corp., 17 So.2d 522 (Fla. 1944); Colen v. Sunhaven Homes, Inc., 98 So.2d 501, (Fla. 1957); McGahey v. McCleod, 135 So.2d 446 (Fla. App. 3rd 1961). Secondly, a review of Chapter 59-1352 shows that its primary purpose is a delegation to the respondents of the power to execute franchise agreements in order that the homes of the residents serviced by the sewage treatment plant be serviced. It might be argued that if the respondents had the power to enforce the state and county pollution laws, such would constitute a convenience to the residents serviced by a sewage treatment plant. However, the power of an administrative body to act must be conferred by explicit terms as set forth in applicable statutes. If inferred from other powers, it is not enough that the power is convenient to other powers — it must be indispensable to them. Colen v. Sunhaven Homes, Inc., supra. See also Freeport Water Co. v. City of Freeport, Ill., 180 U. S. 587 (1901); Knoxville Water Co. v. City of Knoxville, 200 U.S. 22 (1906); Water, Light & Gas Co. v. City of Hutchinson, 207 U.S. 385 (1907); State, ex rel. Bentley v. Pierce, 117 N. E. 6, 7 (Ohio 1917); and Pond, *Public Utilities,* Vol 1, Chap. 8. The franchise agreement statute, Ch. 59-1352, empowers the respondents to supervise and control the methods and means of providing water systems and sewer systems by firms within Hillsborough County and to grant franchises in unincorporated communities to persons applying therefor for the purpose of operating sewer systems. It is readily apparent that the enforcement of pollution abatement laws is not indispensable to the granting of sewer franchise agreements. Moreover, it would appear that neither the respondents nor the inhabitants of the Bay Crest area where the alleged pollution takes place would be convenienced by the respondents' enforcement of the pollution laws, Fla. Stat. 403 and Ch. 67-1504. The respondents, in their other capacity as the Hillsborough County Pollution Control Commission, were fully empowered to implement Ch. 67-1504 but for some reason they chose not to act under that statute. This aspect of the matter will be discussed at more length, infra.

There remains to be considered the respondents' contention that they possess the power to revoke the sewage treatment franchise agreements in view of the current pollution problems. They contend that, irrespective of concepts of due process, they must have this power. Of course, it is elemental that no law impairing the obliga-

tion of contracts shall be passed in the state of Florida. Fla. Const. Art. I, §10. And, although pollution is a critical and pressing problem, administrative officers will not be allowed to disregard concepts of due process and fair play — and substitute quick justice in the name of "kill the pollutants." St. Regis Paper Company v. State of Florida, acting by and through the Florida Air and Water Pollution Control Commission, supra. Our First District Court of Appeal wrote at 237 So.2d 799, et seq. —

Subsection (2) of §403.121 provides for hearing and corrective action if the Commission finds a violation has occurred.

The foregoing section details a classic administrative plan for combating pollution. Notice and hearing is provided for the "run of the mill type" offense with injunctive relief being immediately available through the established judicial arm in critical instances.

The Commission strenuously argues that its grant of powers is derived from Chapter 403 and it further has the inherent powers of both the State Board of Health, under Chapter 381, Florida Statutes, and that of the former Air Pollution Control Commission, under Chapter 403, Florida Statutes. It is well settled that a statutory agency does not possess any inherent powers; such agency is limited to the powers granted, either expressly or by necessary implication, by the statutes creating them. Florida Industrial Commission, ex rel. Special Disability Fund v. National Trucking Company, 107 So.2d 397 (Fla. App. 1st, 1958). Comfort is sought by the Commission from the text, Water Law and Administration, The Florida Experience, authored by Maloney, Plager and Baldwin, in that the authors concluded that the legislature strengthened the enforcement powers of the State especially in §403.161. With this observation we agree; however, in analyzing this section we fail to find a specific grant to the Commission to institute an independent judicial action seeking civil and criminal penalties prior to complying with the mandatory requirements of §403.121.

Reading Chapter 403 in its entirety it is our conclusion that the legislative intent was to establish an administrative agency and empower it with necessary authority to combat the defilement of our air and water primarily through administrative action. An essential mandate to this agency is the seeking out of pollutants and presenting to the violator an opportunity to abate the unlawful practice. The emphasis is upon prevention and abatement; not upon enriching the coffers of the State treasury or its prison population. The legislative scheme is primarily directed towards re-establishing a livable habitat for man; not the abatement or elimination of the industries and governmental units which are guilty of polluting our environment.

As stated above, Ch. 67-1504 parallels Fla. Stat. §403.121. Section 15 of Ch. 67-1504 is almost identical to Fla. Stat. §403.121. *St. Regis* stands for the proposition that the respondents will not be allowed to circumvent the concepts of due process and fair play as set out in the statutes. They have offered no explanation for their

refusal to implement Ch. 67-1504 in their capacity as the Hillsborough County Pollution Control Commission.

The foregoing analysis and holding disposes of the matter. The petitioner is entitled to a writ of certiorari quashing the June 28, 1972 revocation order on the sole ground that the respondents have acted beyond their delegated power and authority. The question of arbitrary and capricious action will be discussed at length, infra.

With regard to the other adjective points raised by the petitioner, suffice it to say that the revocation order which seemingly is based upon Mr. Stewart's uncorroborated hearsay testimony is illegal on that ground. Had the Hillsborough County Pollution Control Commission granted to the petitioner its appeal from the December 14, 1970 notice to correct, the appellate hearing panel would have been required to give probative effect to evidence which would be admissible in the courts of this state. See Ch. 1-2.01, §8, Hillsborough County Pollution Control Commission Rules and Regulations (adopted pursuant to Ch. 67-1504). For cases dealing with the competent substantial evidence rule and hearsay evidence in administrative proceedings, see DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957); City of Miami v. Jervis, 139 So.2d 513, 517 (Fla. App. 3rd 1962); Deel Motors, Inc. v. Department of Commerce, 252 So.2d 389, 394 (Fla. App. 1st 1971); Kostecki v. Board of Liquor Control, 139 N.E. 2d 493 (Ohio 1956); Application of Citizens' Utility Company, 351 P. 2d 487 (Idaho 1960); Application of Cianelli, 227 N.Y.S. 2d 985 (App. Div. 1962); Sunseri v. Board of Medical Examiners, 36 Cal. Rptr. 553 (Cal. App. 1964); and Russell v. License Appeal Commission of the City of Chicago, 273 N.E. 2d 650 (Ill. App. 1971). Moreover, if the respondents were attempting to make a finding of pollution based upon Ch. 67-1504, they violated their own rule with regard to evidence. Where an administrative board or commission has violated its own rule, its order must be quashed or reversed. Central Truck Lines, Inc. v. King, 146 So.2d 370, 373 (Fla. 1962).

### The commission acted arbitrarily and capriciously

Although the legal rules discussed at length above resolve the issue, the court feels constrained to discuss the irrationality and arbitrary and capricious nature of the respondents' actions and proceedings. This is for the reason that one of the court's paramount considerations herein is the protection of the public against the evils of pollution. Quite obviously, the decision announced today is not a license for the petitioner to disregard the pollution laws. The court will always be open, after appropriate administrative remedies are exhausted, to consider requests by administrative officers, the public, as well as businessmen concerning matters of pollution.

Thus, the petitioner will be required to undertake immediate steps with a view to complying with Fla. Stats. §403.086. This court does not order that it do so; it is only obvious that the petitioner must so act, else it will be subject to a shut-down order at the behest of state officials. In this regard, the petitioner should and shall have the unfettered right to implement its plans of revamping its sewage treatment facilities.

When, in April, 1971, the petitioner filed its application for upgrading its facility, it was acting responsibly and in good faith. It is apparent from the record herein that its troubles and disputes with the respondents really commenced after that application was filed. It is perfectly clear from the record that the respondents not only did not desire that the petitioner improve its facility, but that it took every step to preclude its doing so. Unfortunately, various bureaucratic agencies have come into play and have impeded the petitioner's progress. It is apposite to note the steepness of the mountain of agencies and administrative decisions which the petitioner must surmount. The director of the Hillsborough County Pollution Control Commission, acting under and pursuant to Ch. 67-1504, who was represented by his own counsel at oral argument herein, although not professing to possess any expertise with regard to the maintenance of up-to-date sewage treatment facilities, took it upon himself to advise the state of Florida to turn down the petitioner's application for upgrading its plant on the ground that the petitioner was under "enforcement action." If either he or the respondents were taking "enforcement action" against the petitioner, such eludes this court when reviewing the record. To the contrary, the director's superiors, the respondents herein when they were sitting as the Hillsborough County Pollution Control Commission, specifically, in their capacity as county commissioners, advised the petitioner against upgrading its facilities on the ground that such would be expensive which, in turn, would add to the respondents' cost of acquisition for the county of Hillsborough. What is so astonishing to the onlooker, and more importantly, this court, is that the respondents actively pursued a course of preventing the petitioner from complying with Fla. Stat. §403.086. Moreover, the respondents have made it impossible for the petitioner to comply with that statute by the required date, January 1, 1973, in view of the fact that such improvements require a period of approximately seven months. Had the respondents not impeded the petitioner during 1971, the improved or upgraded plant would be in operation today.

However, the respondents' employee, Mr. Stewart, was not the sole impediment to the petitioner's attempt to upgrade its facilities. While negotiations for acquisition of the plant were in progress,

the respondents served a show cause order on the petitioner, same directing the petitioner to show cause why its sewer franchise should not be revoked. The respondents dismissed that show cause order on November 10, 1971 for the reason that they did not want the petitioner to improve its facilities whereby the cost of acquisition would be increased. It was not until settlement negotiations broke down in April, 1972 that the respondents reinstituted the show cause order proceedings by serving their notice of hearing dated May 22, 1972 which eventually led to the revocation order on June 28, 1972. It appears that the reason why the settlement negotiations broke down is that the parties were so far apart, the respondents offering approximately $260,000 for a plant which their own engineers had valued at $729,000. It is thus undeniably clear that the respondents attempted to punish the petitioner into submission by their action. Quite obviously, this proceeding would never have been required had the petitioner submitted to the low price of $260,000. The petitioner has made it very clear that all that it requests is fair value and, if necessary, such should be decided by eminent domain proceedings. However meritorious the respondents' motives in attempting to acquire the petitioner's facilities for the purpose of creating a central sewage district, the courts will not allow administrative officials to discard concepts of due process, fair play and substitute "quick justice" in the name of "kill the pollutants." St. Regis Paper Company v. State, supra.

The court concludes that the respondents have acted arbitrarily and ·capriciously and that such requires an order quashing the revocation order below. However, the court is of the view that the record in this proceeding requires that the respondents be advised that the petitioner shall be allowed to proceed with dispatch in its effort to comply with Fla. Stat. §403.086. Any attempts by the respondents to deter the petitioner in that regard would necessarily be viewed by this court with grave disapprobation. In its efforts to seek permits and approvals by state agencies, this court will be open for the immediate reconciliation of any disputes that might arise. This shall not in any way be construed to preclude the Hillsborough County Commission and the Hillsborough County Environmental Protection Commission from enforcing any pollution laws or other laws against the Bay Crest Utility Company.

## Order

(1) The clerk of this court is hereby directed to file duplicate originals of this memorandum of decision in the mandamus action, State of Florida, ex rel. Bay Crest Utility Company v. Ellsworth G. Simmons, et al., pending in this court, No. 210341, and in the injunction suit, Bay Crest Utility Company v. Ellsworth G. Sim-

mons, et al., No. 209965. Separate orders with regard to those files will be entered.

(2) Pursuant to this memorandum of decision, a writ of certiorari will issue to the respondents, quashing the revocation order of June 28, 1972, costs to the petitioner.

*Order denying petitions for rehearing, January 16, 1973:* The defendants, respondents and appellees filed their petitions and motions for rehearing of the court s issuance on November 14, 1972 of a writ of certiorari in the above styled cause numbered 210342, writ of mandamus in the above styled cause numbered 210341, and order in the above styled cause numbered 209965, all of which, in turn, are based upon the court's memorandum of decision after hearing of the same date.

Counsel for the Bay Crest Utility Company agrees that by the first finding of fact on page 6 of the memorandum to the effect that the Bay Crest Utility Company expended in excess of $800,000, the court did not intend that same should have any bearing upon Bay Crest's pending complaint for inverse condemnation in the above styled cause numbered 209965. The court notes that the amount expended by Bay Crest was incorporated in the finding of fact to illustrate the proprietary interest of the appellant when balanced against the public interest with regard to the enforcement of laws enacted to prevent pollution. Obviously, such has no bearing upon the question of inverse condemnation and such was not intended.

Counsel for the Bay Crest Utility Company also agrees that that portion of the court's memorandum on page 27 pertaining to the requirement that Bay Crest shall be allowed to proceed with dispatch in its effort to comply with Florida Statutes §403.086 should not be construed as meaning that the Hillsborough County Commission and the Hillsborough County Environmental Protection Commission will not be allowed to enforce pollution laws against Bay Crest Utility Company. The court notes that such was not the intended meaning of the memorandum.

The court is otherwise fully advise in the premises and it is thereupon ordered and adjudged that the petition for rehearing filed by the Hillsborough County Environmental Protection Commission (No. 210341), the petition for rehearing filed by the Hillsborough County Environmental Protection Commission (No. 209965), and the motion and petition for rehearing filed by the board of county commissioners of Hillsborough County (No. 210342), are hereby denied.

It is further ordered and adjudged that the following sentence is hereby added as the last sentence of the first of the findings of fact

on page 6 of the memorandum of decision after hearing — "This finding to the effect that the petitioner expended said sum of money for its sewage treatment plant is necessarily limited to the proposition that the proprietary interest of the petitioner must be weighed against the public interest involving the abatement of pollution of our habitat, and said finding shall have no bearing upon the question of inverse condemnation which is to be later considered by the court."

It is further ordered and adjudged that there is hereby added as the last sentence of the first full paragraph on page 27 of the memorandum the following sentence — "This shall not in any way be construed to preclude the Hillsborough County Commission and the Hillsborough County Environmental Protection Commission from enforcing any pollution laws or other laws against the Bay Crest Utility Company."