442 F.2d 284
 Frank PIAZZOLA and Terrance Marinshaw, Petitioners-Appellees,
v.
John WATKINS, Warden, Draper Correctional Institute, and Glen Thompson, Warden, Medical and Diagnostic Center, Mt. Meigs, Alabama, Respondents-Appellants.
 No. 30332.
 United States Court of Appeals, Fifth Circuit.
 April 27, 1971.
 
 MacDonald Gallion, Atty. Gen., Richard F. Calhoun, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellants.
 Morris S. Dees, Jr., Joseph J. Levin, Jr., Levin & Dees, Montgomery, Ala., for petitioners-appellees.
 Before RIVES, THORNBERRY and CLARK, Circuit Judges.
 RIVES, Circuit Judge:
 
 
 1
 The district court granted habeas corpus to two Alabama prisoners and ordered their release. Piazzola and Marinshaw v. Watkins, M.D.Ala.1970, 316 F. Supp. 624. The appellants advance two contentions for reversal: (1) that the appellees have not exhausted the remedies available in the courts of the State as required by 28 U.S.C. § 2254; and (2) that the search and seizure which the district court found to be violative of appellees' Fourth Amendment rights were made pursuant to a constitutionally reasonable school regulation permitting such searches and seizures. We affirm.
 
 
 2
 By separate jury trials, each of the appellees was convicted of the offense of illegal possession of marijuana in the Circuit Court of Pike County, Alabama, and was sentenced to imprisonment for a period of five years. Each appealed to the Court of Appeals of Alabama, but each failed to comply with Title 7, Section 827(1), Code of Alabama 1940 and to include a transcript of evidence in his appeal. Necessarily the state appellate courts were confined to review of matters contained in the record proper. The State Court of Appeals affirmed both convictions without opinion, and the State Supreme Court granted motions to strike their petitions for certiorari. Marinshaw v. State of Alabama, 1968, 45 Ala.App. 723, 221 So.2d 121; 1968, 284 Ala. 4, 221 So.2d 121; Piazzola v. State of Alabama, 1968, 45 Ala.App. 723, 221 So.2d 404; 1968, 284 Ala. 39, 221 So.2d 404. Their habeas corpus petition to the federal district court was submitted on a stipulation of facts which included, as Exhibit 1, a transcript of the testimony taken in the State Circuit Court on their motion to suppress evidence, and which further stipulated that "The only evidence against Petitioners is the marijuana allegedly found as a result of the search described in Exhibit 1."
 
 
 3
 The district court condensed the transcript of testimony into the following findings of fact:
 
 
 4
 "On the morning of February 28, 1968, the Dean of Men of Troy State University was called to the office of the Chief of Police of Troy, Alabama, to discuss `the drug problem' at the University. Two State narcotic agents and two student informers from Troy State University were also present. Later on that same day, the Dean of Men was called to the city police station for another meeting; at this time he was informed by the officers that they had sufficient evidence that marijuana was in the dormitory rooms of certain Troy State students and that they desired the cooperation of University officials in searching these rooms. The police officers were advised by the Dean of Men that they would receive the full cooperation of the University officials in searching for the marijuana. The informers, whose identities have not yet been disclosed, provided the police officers with names of students whose rooms were to be searched. Still later on that same day (which was during the week of final examinations at the University and was to be followed by a week-long holiday) the law enforcement officers, accompanied by some of the University officials, searched six or seven dormitory rooms located in two separate residence halls. The rooms of both Piazzola and Marinshaw were searched without search warrants and without their consent. Present during the search of the room occupied by Marinshaw were two State narcotic agents, the University security officer, and a counselor of the residence hall where Marinshaw's room was located. Piazzola's room was searched twice. Present during the first search were two State narcotic agents and a University official; no evidence was found at this time. The second search of Piazzola's room, which disclosed the incriminating evidence, was conducted solely by the State and City police officials.
 
 
 5
 "At the time of the seizure the University had in effect the following regulation:
 
 
 6
 The college reserves the right to enter rooms for inspection purposes. If the administration deems it necessary, the room may be searched and the occupant required to open his personal baggage and any other personal material which is sealed.
 
 
 7
 Each of the petitioners was familiar with this regulation. After the search of the petitioners' rooms and the discovery of the marijuana, they were arrested, and the State criminal prosecutions and convictions ensued."
 
 
 8
 316 F.Supp. at 625.
 
 1. Exhaustion of State Remedies
 
 9
 Appellees' failure to perfect their respective appeals in a manner which would have required review of the validity of the search and seizure, under the circumstances of this case, does not support an inference of deliberate bypassing of the state court system, nor can it be deemed such an intelligent and understanding waiver as to justify the withholding of federal habeas corpus relief. Fay v. Noia, 1963, 372 U.S. 391, 399, 83 S.Ct. 822, 9 L.Ed.2d 837. Further, their failure effectively to seek review by appeal was not a failure to exhaust "the remedies available in the courts of the State" as required by 28 U.S.C. § 2254, because that requirement "is limited in its application to failure to exhaust state remedies still open to the habeas applicant at the time he files his application in federal court." Id. 372 U.S. at 434, 435, 83 S.Ct. at 847.
 
 
 10
 A petition for habeas corpus is rarely an effective post-conviction remedy in Alabama for a habeas petition by a state prisoner calls for the very limited inquiry of whether "* * * the court proceeding and conviction under which the prisoner is held are of a court of competent jurisdiction and are regular on their face, it is not permissible to impeach the court's jurisdiction by parol testimony." Vernon v. State, 1941, 240 Ala. 577, 200 So. 560, 563, quoted in Johnson v. Williams, 1943, 244 Ala. 391, 13 So.2d 683, 685; accord, Griffin v. State, 1953, 258 Ala. 557, 63 So.2d 682, 683.
 
 
 11
 The broader Alabama post-conviction remedy of writ of error coram nobis is not available because "* * * errors concerning facts known to the court with reference to which the court acted at the time of the trial are not reviewable." Johnson v. Williams, supra, 13 So.2d at 686; accord, Duncan v. State, 1964, 42 Ala.App. 509, 169 So.2d 439, 441; Woodard v. State, 1965, 42 Ala.App. 552, 171 So.2d 462, 463, 468. There are no new facts to be presented by coram nobis. The state trial court heard evidence on the claimed illegal search and seizure and denied the appellees' timely filed motion to suppress evidence. Coram nobis does not lie to enable an accused to have a reconsideration of matters in issue and determined by the trial court in the original proceeding. 24 C.J.S. Criminal Law § 1606(10), pp. 705, 706.
 
 
 12
 The district court properly held that the appellees had exhausted the remedies available to them in the courts of the State of Alabama as required by 28 U.S.C. § 2254.[1]
 
 2. Validity of Search and Seizure
 
 13
 The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" (emphasis added). The question is whether in the light of all of the facts and circumstances, including the University regulation, the search which disclosed the marijuana was an unreasonable search. The district judge made reasonableness the touchstone of his opinion as to the validity of the search. We find ourselves in agreement with his view that this search was unreasonable.
 
 
 14
 In a case where the facts were similar, People v. Cohen, 57 Misc.2d 366, 292 N.Y.S.2d 706, aff'd, 61 Misc.2d 858, 306 N.Y.S.2d 788, Judge Burstein said:
 
 
 15
 "The police and the Hofstra University officials admitted that they entered the room in order to make an arrest, if an arrest was warranted. This was, in essence, a fishing expedition calculated to discover narcotics. It offends reason and logic to suppose that a student will consent to an entry into his room designed to establish grounds upon which to arrest him. Certainly, there can be no rational claim that a student will self-consciously waive his Constitutional right to a lawful search and seizure. Finally, even if the doctrine of implied consent were imported into this case, the consent is given, not to police officials, but to the University and the latter cannot fragmentize, share or delegate it."
 
 
 16
 Another case somewhat in point on the facts is Commonwealth v. McCloskey, Appellant, 1970, 217 Pa.Super. 432, 272 A.2d 271. There the court reversed a student's marijuana conviction because the policemen who entered his dormitory room to execute a search warrant did not knock or announce their presence and purpose before entering. In part, Judge Cercone speaking for the majority of the court said:
 
 
 17
 "It was the Commonwealth's position that the Fourth Amendment protections do not apply to a search of a college dormitory room. The test to be used in determining the applicability of the Fourth Amendment protections is whether or not the particular locale is one `* * * in which there was a reasonable expectation of freedom from governmental intrusion': Mancusi v. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154, 1159 (1968) (large office room shared by the defendant and other union officials). See also Sabbath v. United States, supra [391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828] (apartment); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), rehearing denied 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (hotel room); and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (telephone booth). A dormitory room is analogous to an apartment or a hotel room. It certainly offers its occupant a more reasonable expectation of freedom from governmental intrusion than does a public telephone booth. The defendant rented the dormitory room for a certain period of time, agreeing to abide by the rules established by his lessor, the University. As in most rental situations, the lessor, Bucknell University, reserved the right to check the room for damages, wear and unauthorized appliances. Such right of the lessor, however, does not mean McCloskey was not entitled to have a `reasonable expectation of freedom from governmental intrusion' or that he gave consent to the police search,[1] or gave the University
 
 
 18
 "[1].Voluntary consent must be proven by clear and positive evidence [United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962), cert. denied 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963)], and the State has the burden of proof [Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968)]. Waiver of Fourth Amendment rights through consent to a search cannot be lightly inferred. See Simmons v. Bomar, 349 F.2d 365, 366 (6th Cir. 1965); United States v. Como, 340 F.2d 891, 893 (2d Cir. 1965). Every reasonable presumption is against one's waiver of his constitutional rights. Weed v. United States, 340 F.2d 827, 829 (10th Cir. 1965).
 
 
 19
 authority to consent to such search.[2]
 
 
 20
 "[2].In Stoner v. California, supra, a hotel clerk allowed the police to search a guest's room, and the Supreme Court there stated: `It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent.' 376 U.S. at 489, 84 S.Ct. at 893, 11 L.Ed.2d at 860. Many other cases have held that one in the position of a lessor cannot consent to a police search of a tenant's premises, even though the lessor, himself has a right to enter the room or apartment. See United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951) and Commonwealth v. Ellsworth, 421 Pa. 169, 218 A.2d 249 (1966) (hotel proprietor let police into a guest's room); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) and Cunningham v. Heinze, 352 F.2d 1 (9th Cir. 1965) cert. denied 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed. 2d 309 (1966) (landlord allowed police search of tenant's room)."
 
 
 21
 In the case of Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576, to which Judge Cercone referred, the Court commented at some length on the concept of "constitutionally protected areas":
 
 
 22
 "The petitioner has strenuously argued that the booth was a `constitutionally protected area.' The Government has maintained with equal vigor that it was not.[8] But this effort to decide
 
 
 23
 "[8].In support of their respective claims, the parties have compiled competing lists of `protected areas' for our consideration. It appears to be common ground that a private home is such an area, Weeks v. United States, 232 U.S. 383, [34 S.Ct. 341, 58 L.Ed. 652], but that an open field is not. Hester v. United States, 265 U.S. 57, [44 S.Ct. 445, 68 L.Ed. 898. Defending the inclusion of a telephone booth in his list the petition cites United States v. Stone, D.C., 232 F.Supp. 396, and United States v. Madison, 32 L.W. 2243 (D.C.Ct.Gen.Sess.). Urging that the telephone booth should be excluded, the Government finds support in United States v. Borgese, D.C., 235 F.Supp. 286.
 
 
 24
 whether or not a given `area,' viewed in the abstract, is `constitutionally protected' deflects attention from the problem presented by this case.[9] For
 
 
 25
 "[9].It is true that this Court has occasionally described its conclusions in terms of `constitutionally protected areas,' see, e. g., Silverman v. United States, 365 U.S. 505, 510, 512, [81 S.Ct. 679, 5 L.Ed.2d 734]; Lopez v. United States, 373 U.S. 427, 438-439, [83 S.Ct. 1381, 10 L.Ed.2d 462]; Berger v. New York, 388 U.S. 41, 57, 59, [87 S.Ct. 1873, 18 L.Ed.2d 1040], but we have never suggested that this concept can serve as a talismanic solution to every Fourth Amendment problem.
 
 
 26
 the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210 [87 S.Ct. 424, 17 L.Ed.2d 312]; United States v. Lee, 274 U.S. 559, 563, [47 S.Ct. 746, 71 L.Ed. 1202]: But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See Rios v. United States, 364 U.S. 253 [80 S.Ct. 1431, 4 L.Ed.2d 1688]; Ex parte Jackson, 96 U.S. 727, 733 [24 L.Ed. 877].
 
 
 27
 "The Government stresses the fact that the telephone booth from which the petitioner made his calls was constructed partly of glass, so that he was as visible after he entered it as he would have been if he had remained outside. But what he sought to exclude when he entered the booth was not the intruding eye — it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen. No less than an individual in a business office,[10] in a friend's apartment,[11]
 
 
 28
 "[10].Silverthorne Lumber Co. v. United States, 251 U.S. 385, [40 S.Ct. 182, 64 L.Ed. 319].
 
 
 29
 or in a taxicab,[12] a person in a
 
 
 30
 "[11].Jones v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697].
 
 
 31
 "[12].Rios v. United States, 364 U.S. 253, [80 S.Ct. 1431, 4 L.Ed.2d 1688]."
 
 
 32
 telephone booth may rely upon the protection of the Fourth Amendment. * * *"
 
 
 33
 389 U.S. at 351-352, 88 S.Ct. at 511.
 
 
 34
 By a similar process of reasoning, we must conclude that a student who occupies a college dormitory room enjoys the protection of the Fourth Amendment. True the University retains broad supervisory powers which permit it to adopt the regulation heretofore quoted, provided that regulation is reasonably construed and is limited in its application to further the University's function as an educational institution.[2] The regulation cannot be construed or applied so as to give consent to a search for evidence for the primary purpose of a criminal prosecution.[3] Otherwise, the regulation itself would constitute an unconstitutional attempt to require a student to waive his protection from unreasonable searches and seizures as a condition to his occupancy of a college dormitory room. Compare Tinker v. Des Moines Independent Community School District, 1969, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731. Clearly the University had no authority to consent to[4] or join in a police search for evidence of crime.[5]
 
 
 35
 The right to privacy is "no less important than any other right carefully and particularly reserved to the people." Mapp v. Ohio, 1961, 367 U.S. 643, 657, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081. The results of the search do not prove its reasonableness. This search was an unconstitutional invasion of the privacy both of these appellees and of the students in whose rooms no evidence of marijuana was found. The warrantless search of these students' dormitory rooms cannot be justified. The judgment is therefore
 
 
 36
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 We do not, however, agree with one ground for that holding as stated by the district court: "Furthermore, it affirmatively appears that petitioners have already raised the illegal search and seizure issue before the Alabama Supreme Court. Since they have done so, it is not necessary that they attempt to do so again through collateral proceedings. Brown v. Allen, Warden, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953)." 316 F.Supp. at 625. Because Marinshaw and Piazzola failed to include any transcript of evidence in their appeals, review was necessarily confined to the record proper, and the illegal search and seizure issue was not presented to either of the appellate courts of the State
 
 
 [2]
 One of the "Residence Hall Policies" of this University provides that "College men are assumed to be mature adults with acceptable and established habits." Another adjures students, "Keep rooms locked at all times." The University thus recognized that it cannot exercise that strict control of its students which might be permitted in a boys' school where an "in loco parentis" standard would be more appropriate
 
 
 [3]
 See the authorities cited in footnote 1 of Commonwealth v. McCloskey, Appellant, quotedsupra.
 
 
 [4]
 See the authorities cited in footnote 2 of Commonwealth v. McCloskey, Appellant, quotedsupra.
 
 
 [5]
 As illustrated by the more intense second search of Piazzola's room, such a search involves a greater invasion of the student's privacy than can be justified by the University's supervisory interests
 
 
 
 37
 CLARK, Circuit Judge (concurring in part and dissenting in part).
 
 
 38
 I respectfully dissent from part 2 of the Court's opinion as to the defendant, Marinshaw. The college had a direct interest in keeping its dormitories free of the specific criminal activity here involved — the possession of the drug, marihuana. The regulation was a reasonable means of embodying this interest. Cf. Pratz v. Louisiana Polytechnic Institute, 316 F.Supp. 872 (D.C.W.D.La., 1970), aff. 401 U.S. 1004, 91 S.Ct. 1252, 28 L.Ed. 2d 541 (1971). Marinshaw was found to be familiar with the regulation. When he chose to place the evidence of this criminal conduct in his dormitory room he knowingly exposed this material to inspections by officials of the University. He cannot now reinstate as private an area he had agreed was thus accessible. A publicly owned dormitory room is not in my mind the equivalent of a private rooming house. I concur in the result as to the defendant, Piazzola, because I do not believe the regulation can be validly construed to authorize the college to consent to an independent police search.
 
 
 39
 In all other respects I concur in the opinion of the majority.