FRANK A. MEYERS, Administrator Division of CriminalInvestigation Department of Justice
You ask three questions, each of which will be discussed in turn. *Page 226 
1. Does the opinion of the United States Supreme Court inMichigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942 (1978), negate or supercede sec. 165.55 (9) and (10), Stats.?
Section 165.55 (9), Stats., provides that:
 The state fire marshal and his subordinates may at all reasonable hours in performance of their duties enter upon and examine any building or premises where any fire has occurred and other buildings or premises near the same, and seize any evidence found as a result of such examination which in the opinion of the officer finding the same may be used in any criminal action which may result from such examination or otherwise, and retain it for a reasonable time or until it becomes an exhibit in the action.
Section 165.55 (10), Stats., provides that:
 The state fire marshal, his chief assistant and deputies, upon complaint of any person, or without any complaint previously entered, shall have a right at all reasonable hours, for the purpose of examination, to enter into and upon all buildings and premises within their jurisdiction.
 Michigan v. Tyler was decided in 1978 by a divided Court. Briefly, its holding was that an early search of a burned-out furniture store where arson was suspected had been conducted lawfully without either an administrative or traditional warrant because on the unique facts of the case, the search could be considered part of the initial lawful entry to extinguish the fire and determine, for fire-fighting purposes, its cause. Separate entries without consent to investigate the fire's cause would have required an administrative warrant, however, and when the investigation yielded probable cause to believe arson had occurred, greater access to gather evidence for prosecution should have been gained only after obtaining a traditional search warrant. Arson evidence gathered during warrantless entries unrelated to the exigency of the fire, and to which consent had not been given, was ruled inadmissible under the fourth andfourteenth amendments.
The Tyler decision neither negates nor supercedes sec. 165.55
(9) and (10), Stats. Because these subsections are silent on the question of warrant requirements in arson investigations, they could arguably *Page 227 
be construed to contain a grant of search power to the State Fire Marshal in contravention of the limitations set out in Tyler. It is a cardinal rule of statutory construction, however, that a statute must be construed so as to preserve it and avoid doubts about its constitutionality. State ex rel. Hammermill Paper Co.v. La Plante, 58 Wis.2d 32, 205 N.W.2d 784 (1973). In my opinion, these subsections can be interpreted to mean no more than that the State Fire Marshal, in investigating arson, is on an equal footing with other law enforcement officers of this state in terms of his ability to conduct searches for evidence of a crime. In making searches, the State Fire Marshal, like all other law enforcement officers of this state, is bound by the requirements of the fourth amendment, as interpreted from time to time by the Court. These subsections, in sum, are amenable to a construction as simple enabling laws that are consistent with constitutional requirements for searches under the most recent holdings of the United States Supreme Court. They should be so construed.
2. Absent the statutory authority of sec. 165.55 (9) and (10), Stats., do the State Arson Bureau and all local fire and police departments in Wisconsin have to obtain a search warrant to examine a fire scene for the crime of arson if there is a delay between the time of the fire and the time of the investigation?
As stated in the answer to your first question, sec. 165.55 (9) and (10), Stats., must be construed to be simple enabling legislation. Thus, regardless of the existence of these statutes and in the absence of proper consent, both the State Arson Bureau and local authorities are bound by the warrant requirements as developed in the Tyler case. These requirements were summarized by the Court as follows:
 In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. [Citations omitted.] Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. [Citation omitted.] *Page 228 
Michigan v. Tyler, 98 S.Ct. at 1951. What constitutes a "reasonable time to investigate" is to be determined both by the exigencies of the situation and the individuals' reasonable expectations of privacy, id. at 1950 n. 6, and may encompass a subsequent entry that is no more than an actual continuation of the first entry, id. at 1951.
Thus, it is clear that in the absence of proper consent, warrantless entry and investigation is permissible only when and to the extent required by the exigency of a fire, and that entry by firefighters and officials to fight a fire and to investigate its cause for a "reasonable time" thereafter falls within this "exigency exception" to the warrant requirement. Subsequent entries to investigate the cause of a fire are subject to the warrant procedures governing administrative searches as set forth in secs. 66.122 and 66.123, Stats. It is also clear that evidence of arson discovered during a search conducted under either the administrative warrant procedure or "exigency exception" conditions as outlined above is admissible at trial. Id. at 1950, 1951. Thereafter, searches made specifically for the purpose of gathering evidence for possible prosecution must be conducted under the authority of a traditional criminal investigative search warrant. Id. at 1951.
As a practical matter, the Tyler Court was sharply divided on the questions of what constitutes a "continuation" of the original entry to fight the fire and how long after a fire is extinguished reentry without an administrative warrant is permissible. In Tyler, the Court said, at 1951, that "on thefacts of this case, we do not believe that a warrant was necessary for the early morning reentries." There, as the fire was being extinguished, the fire chief and his arrestants began to investigate the fire's cause. Because darkness, smoke, and steam severely limited visibility, the officials left at 4:00 a.m. Their warrantless return shortly after daylight to continue the cause investigation was held legal: "[u]nder thesecircumstances, we find that the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence," id. It should be noted, however, that the Tyler Court set no firm guidelines, an omission that several dissenting Justices in that case viewed as undesirable.
 To hold that some subsequent re-entries are "continuations" of earlier ones will not aid firemen, but confuse them, for it will be difficult to predict in advance how a court might view a re-entry. *Page 229 
In the end, valuable evidence may be excluded for failure to seek a warrant that might have easily been obtained.
Id., at 1953 (dissenting opinion). The "continuation" issue will certainly be the basis for numerous pre-trial motions to suppress evidence and subsequent appeals in arson cases where the investigation of cause does not follow naturally from or occur as a part of fighting the fire.
As an additional practical point, though, sec. 165.55, Stats., charges you and your Deputy State Fire Marshals not with fire-fighting, but with investigating "fires of incendiary origin."
Finally, I would also again call your attention to the Tyler
requirements, discussed above, that once some evidence of arson is obtained, the search must be halted and a criminal warrant sought absent consent for a further search.
3. If a consent to search is necessary, must it be obtained from the owner, the tenant, both or whom?
Consent of the tenant is generally required if the premises to be searched are under the tenant's control; a landlord may not consent to a search of his tenant's premises even where the landlord has retained some right of entry for inspecting or cleaning the premises. Chapman v. United States, 356 U.S. 610
(1961). Where a third party has joint access or control for most purposes, as in the case of a co-tenant, his consent may validate a warrantless search. United States v. Matlock, 415 U.S. 164
(1964). This last result may be different, though, if there is evidence that the objecting co-tenant did not assume the risk that another tenant would allow a search. Id. at 993. See also,e.g., United States v. Cataldo, 433 F.2d 38 (2d Cir. 1970) (third-party consent held valid, but the court expressly stated that it found no evidence that risk of search consent had not been assumed).
Precise guidelines for when a third-party consent will validate a warrantless search have not been clearly set. Property interests alone have been held an insufficient basis for giving a valid consent. United States v. Matlock, 415 U.S. 164 (1964). On another occasion, the Court, in Stoner v. California, 376 U.S. 483
(1964), held that a hotel clerk's consent to a search of a guest's room was invalid because in the Court's view the police there had no reasonable basis for believing that the clerk had authority to consent for the guest. In another case *Page 230 
exploring the limits of third-party consent, the Wisconsin Supreme Court held that under Matlock, being a relative of the property owner does not alone provide grounds for a valid consent. Kelly v. State, 75 Wis.2d 303, 249 N.W.2d 800 (1977). Both the Wisconsin Supreme Court, see, e.g., Kelly, and the United States Supreme Court, see, e.g., Matlock, Stoner, have made it clear that "the rights protected by the [f]ourth [a]mendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of `apparent authority,'" Kelly v. State, 75 Wis.2d 303, 315, 249 N.W.2d 800,806 (1977), quoting Stoner v. California, 376 U.S. 483, 488
(1964).
The cases just discussed, like most cases where consent is an issue, involved areas under the primary control of the occupant of the places to be searched. Where parts of a building not under the exclusive control of a tenant are to be searched, the owner may validly consent to the search. Gillars v. United States,182 F.2d 962 (D.C. Cir. 1950). Whether in this type of case, involving areas used in common with other tenants and the landlord, a tenant may consent for other tenants or the landlord would seem to depend on whether the person objecting to the search had a reasonable expectation of privacy in the areas. Cf.,Piazzola v. Watkins, 442 F.2d 284 (5th Cir. 1971) (acknowledgment in Katz v. U.S., 389 U.S. 347 (1967), that the fourth amendment may protect what one seeks to keep private, even in a publicly accessible area, is also applicable in cases involving third-party consent to search of student's dormitory room); UnitedStates v. Matlock, 415 U.S. 164 (1964) (one reason a co-tenant with joint access and control for most purposes of tenants' premises could give consent, was that subject of search who allowed third-party search access and control could not reasonably expect privacy).
BCL:WHW:DJH *Page 231