HOWARD C. RICHARDS, Secretary Department of Agriculture, Tradeand Consumer Protection
You have asked for my opinion as to whether authorized agents of the Department of Agriculture, Trade and Consumer Protection's Animal Health Division may stop and search vehicles transporting livestock in Wisconsin. You have directed my attention to various statutes in chapters 93 and 95, Stats., as well as administrative rules concerning importation of various animals, their transportation and movement and the licensing of livestock dealers, truckers and markets.
Specifically, section 93.08 provides:
 The department and its authorized agents have power to enter, within reasonable hours, any field, orchard, garden, packing ground, building, freight or express office, warehouse, car, vessel, vehicle, room, cellar, storehouse, cold storage plant, packing house, stockyard, railroad yard or any other place of business, which it may be necessary or desirable for them to enter in performing their duties or in enforcing the laws entrusted to their administration.
Section 95.23(1) relating to the investigation and enforcement of diseased animals provides: "Authorized inspectors and agents of the department may enter at reasonable times any premises, building or place to investigate the existence of animal diseases or to investigate violations of or otherwise enforce the laws relating to animal health."
Administrative agencies "have only such powers as are expressly granted to them or necessarily implied . . . ." American BrassCo. v. State Board of Health, 245 Wis. 440, 448, 15 N.W.2d 27
(1944). Under the above-quoted statutes, the department has the express power to enter any car, vessel or vehicle within reasonable hours to enforce the laws entrusted to its administration. It is my opinion *Page 173 
that the statute necessarily implies the power to stop cars, vessels or vehicles in order to enter them. I do not believe the Legislature intended the department to have only the power to enter those cars, vessels or vehicles which happen to be stopped at the time the enforcement need to enter arises. It is my opinion, therefore, that agents of the department's Animal Health Division are authorized under state law to stop and search vehicles transporting livestock in the state of Wisconsin. However, such authority is subject to the protections against unreasonable searches and seizures provided under thefourth amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution.
It is well-settled that administrative searches and seizures are subject to the protections of the fourth amendment of the United States Constitution because "[t]he basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court, 387 U.S. 523, 528 (1967). The Supreme Court of the United States in the Camara decision held that inspectors of the department of health of the city of San Francisco were required to obtain a warrant prior to a routine search of an apartment building for possible violation of the city's housing code. The Court, in a companion case, held that the warrant requirement applied to commercial as well as residential premises. See v. The City of Seattle, 387 U.S. 541
(1967). "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." Marshall v. Barlow's, Inc.,436 U.S. 307, 312-13 (1978). See also Michigan v. Tyler, 436 U.S. 499
(1978); 63 Op. Att'y Gen. 337 (1974); 68 Op. Att'y Gen. 225 (1979). Also see gen. 3 La Fave, Search and Seizure § 10.2 (1987).
Because unreasonable searches and seizures even for administrative purposes are prohibited by the fourth amendment, an exception to the warrant requirement contained in thefourth amendment must be found for stopping vehicles. Such an exception to the requirement for a warrant has been found in the cases of automobiles so long as probable cause exists for the search.Carroll v. United States, 267 U.S. 132 (1925). Additionally, inTerry v. State of Ohio, 392 U.S. 1 (1968), the Supreme Court recognized that a stop could be effected on a less stringent test than probable cause. In Delaware v. Prouse, 440 U.S. 648 (1979), the Supreme Court held *Page 174 
that a routine stop of an automobile was a seizure within the meaning of the fourth amendment. Prouse involved a routine stop of an automobile for a driver's license and registration spot check. The Court held that in determining whether such a spot check was reasonable, the law enforcement practice must be balanced against the intrusion on the individual'sfourth amendment interest. In holding the routine stop unreasonable, the Court said that the reasonableness standard
 usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an objective standard," [footnote omitted] whether this be probable cause [footnote omitted] or a less stringent test [footnote omitted]. In those situations in which the balance of interests precludes insistence upon "some quantum of individualized suspicion," [footnote omitted] other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field," [citations omitted].
Prouse, 440 U.S. at 654-55. See also United States v.Brignoni-Ponce, 422 U.S. 873 (1975); State v. Guzy,139 Wis.2d 663, 407 N.W.2d 548 (1987).
Since violations of the animal disease law or the requirements for the various health certificates for the importation and transportation of animals do not lend themselves readily to individualized suspicion of the vehicle in question, some other safeguard must be relied upon to justify the stop in the instances which you pose.
It is my opinion that, in the absence of particularized suspicion that a vehicle is violating the animal health or other health laws administered by your Animal Health Division, you will need to resort to the use of permanent or temporary roadblocks.
Permanent roadblocks have been upheld without a reasonable individualized suspicion in United States v. Martinez-Fuerte,428 U.S. 543 (1976). The use of a permanent roadblock or checkpoint might coincide with weigh stations which are located throughout the state on major transportation arteries. Animal health inspectors could work in conjunction with open weigh stations to check documentation of vehicles transporting animals in the state with little or no additional intrusion upon the truck drivers. *Page 175 
Although nonpermanent checkpoints or roadblocks have not been passed on by the United States Supreme Court, such checks have been found constitutional by a number of other states. State v.Martin, 145 Vt. 562, 496 A.2d 442 (1985); State v. Garcia,500 N.E.2d 158 (Ind. 1986); People v. Bartley, 109 Ill. 2d 273, 93 Ill. Dec. 347, 486 N.E.2d 880 (1985); State v. Halverson,277 N.W.2d 723 (S.D. 1979); and State v. Hilleshiem, 291 N.W.2d 314
(Iowa 1980) (a case striking down a roadblock not meeting the proper criteria while approving nonpermanent roadblocks in principle).
The case law criteria for constitutionally valid nonpermanent roadblocks are: (1) the location of the roadblock must be selected for its visibility and safety; (2) the roadblock must give adequate advanced warning by way of signs and illumination at night, which timely inform the motorist of the impending intrusion; (3) the roadblock must be manned by uniformed officers and official vehicles in sufficient quantity to show the motorists stopped the authority of the police power of the community; (4) the location, manner of selection of the vehicles stopped and general procedures at the roadblock must be dictated by higher administrative officials and must be in a sufficiently systematic manner to avoid the random discretion of field officers and to indicate to the motorists stopped that they are not being singled out for attention; and (5) the purpose of the stop must be explained to motorists and the detention must be minimal to perform the object of the roadblock. I must also caution that wholesale searches of vehicles without probable cause have been struck down even at fixed border checkpoints.United States v. Ortiz, 422 U.S. 891 (1975). Thus, a search of the vehicle is probably not justified unless the brief seizure ripens into probable cause.
In reaching my conclusion, I am mindful that some cases have permitted inspection of commercial premises without any probable cause or reasonable suspicion. United States v. Biswell, 406 U.S. 311
(1972) (the firearms business); Colonnade Catering Corp. v.United States, 397 U.S. 72 (1970) (liquor business); Donovan v.Dewey, 452 U.S. 594 (1981) (the operation of mines). The justification for these inspections has been a history in the business in question of close governmental supervision and inspection such that the owner and operator of the business have no reasonable expectation of privacy. Even then, however, the inspection can become "so random, infrequent, or unpredictable that the owner, *Page 176 
for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials." Donovan, 452 U.S. at 599. In my view, the animal health area is not the type of closely supervised business upon which these cases turn. Animal health is more akin to the Occupational Safety and Health Administration Act for which warrants were required in Barlow, city health codes for which warrants were required in Camara and fire codes for which warrants were required in See.
I am also mindful that the Supreme Court has upheld against a constitutional challenge the boarding of ocean going vessels upon inland waterways with ready access to the open sea. United Statesv. Villamonte-Marquez, 462 U.S. 579 (1983). The justification for this holding, however, was that the vessel had ready access to the open sea and could not be readily channeled as on a roadway. The Supreme Court has further held that state or territorial borders are not in the same class constitutionally as international borders. Torres v. Com. of Puerto Rico, 442 U.S. 465
(1979).
I am also mindful that random automobile stops for game violations have been struck down as unconstitutional. SeeUnited States v. Munoz, 701 F.2d 1293 (9th Cir. 1983); Com. v. Palm,315 Pa. Super. 377, 462 A.2d 243 (1983).
In conclusion, it is my opinion that officials of the Animal Health Division of the Department of Agriculture, Trade and Consumer Protection have the authority to stop vehicles provided that they have an articulable suspicion of individualized violation of the animal health statutes or regulations or the stops are made at permanent roadblocks or temporary roadblocks which meet the constitutional criteria set forth above.
DJH:WDW *Page 177