Opinion issued March 17, 2005











 
 


 



In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01322-CR




JUSTIN GRUBBS, Appellant

V.

THE STATE OF TEXAS, Appellee





On Appeal from County Criminal Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1194241




O P I N I O N


          After his pretrial motion to suppress evidence was denied, appellant, Justin
Grubbs, pleaded guilty to misdemeanor possession of marihuana. The trial court
deferred its finding of guilt, placed appellant on community supervision for nine
months, and assessed a fine of $150.00. 
          In his sole issue, appellant contends that the trial court erred in denying his
motion to suppress marihuana seized as a result of an unlawful entry into his
university dorm room. 
          We affirm.
BACKGROUND
          Appellant and Benjamin Marsh were students residing in Room 101 of Law
Hall, a University of Houston (“U of H”) dormitory. At approximately 11:20 p.m.,
on September 15, 2003, Shaun Deskins, the resident assistant (“R.A.”) on duty in Law
Hall, received a complaint concerning the odor of marihuana coming from Room 101. 
          After confirming the odor, Deskins obtained the master key to Room 101 and 
instructed another person to contact campus police. Officers Tinney and Roney, of
the U of H Police Department, met Deskins in the hallway outside of Room 101 and
confirmed the odor of marihuana emanating from the room. One of the officers
knocked on the door, but there was no response. Pursuant to U of H departmental
procedure, Deskins announced through the door that he was “the R.A. on-call” and
that he was “keying in.” 
          Deskins unlocked the door, which opened inward, and stepped into the room
enough to prop the door open. The design of the room was such that a person
standing in the doorway could not see the whole room. Upon stepping or leaning into
the room, Deskins could then see appellant and Marsh. The officers remained in the
hallway outside of the room and could not see into the room. At some point,
appellant and Marsh moved to the doorway. Once the officers could see them from
the hallway, Roney asked if they “minded if [the officers] came in.” One of the boys
said, “No, go ahead and come on in.” 
          Inside the room, the officers noted a very strong odor of burned marihuana and
determined that Marsh showed signs of marihuana intoxication. The officers asked
appellant and Marsh if they had been smoking marihuana. Appellant and Marsh did
not respond. Tinney and Marsh then went into the hallway, while Roney spoke with
appellant inside the room. 
          Roney again asked appellant if there was marihuana in the room. Appellant
pulled a clear plastic bag from underneath a blanket on Marsh’s bed. The bag
contained a green, leafy substance, rolling papers, and a pipe. Appellant admitted
that the contents of the bag were his. The officers then arrested appellant and Marsh.
          Appellant and Marsh were charged with possession of less than two ounces of
marihuana. After a hearing, the trial court denied appellant’s motion to suppress the
marihuana. No formal written findings of fact were entered.
Standard of Review
          A trial court’s ruling on a motion to suppress evidence will not be set aside
unless an abuse of discretion is found. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); State v. Derrow, 981 S.W.2d 776, 778 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref’d).    We must afford almost total deference to the trial court’s
determination of facts supported by the record, especially when the findings are based
on the evaluation of the witnesses’ credibility and demeanor. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). 
          In reviewing the trial court’s ruling, we apply a bifurcated standard of review. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost
total deference to the trial court’s determination of the historical facts and conduct a
de novo review of the trial court’s application of the law to those facts. Id. The trial
court is the exclusive finder of fact in a motion to suppress hearing, and it may choose
to believe or disbelieve any or all of any witness’s testimony. State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).
          Where, as here, the trial court does not make explicit findings of fact, we
review the evidence in the light most favorable to the trial court’s ruling. Carmouche,
10 S.W.3d at 327–28. We must assume the trial court made implied findings of fact
that are supported by the record. Id. Because we do not determine credibility, our
review of reasonable suspicion, probable cause, consent, and mixed questions of law
and facts becomes a de novo review of legal questions. Derrow, 981 S.W.2d at 778
(citing Ornelas v. United States, 517 U.S. 690, 697–99, 116 S. Ct. 1657, 1661–62
(1996)).
ANALYSIS
          Appellant brought a motion to suppress the marihuana seized from his room,
all testimony concerning the events in question, and all oral or written statements
made by appellant. Appellant based his motion on state and federal constitutional
grounds, as well as on a state statutory ground. U.S. Const. amend. IV; Tex. Const.
art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2004–2005). On
appeal, however, appellant solely raises a claim that the marihuana was seized
unlawfully under the Fourth Amendment to the United States Constitution. 
          In this issue, appellant contends that the trial court erred in denying his motion
to suppress marihuana that was seized as a result of an unlawful entry of his
university dorm room. Appellant contends that Deskins was not authorized to unlock
appellant’s door for campus police, nor could Deskins consent to a search by campus
police. Thus, asserts appellant, the subsequent warrantless entry by police and the
seizure of the marihuana were unlawful.
A.      Fourth Amendment Protections
          The Fourth Amendment to the United States Constitution protects the “right
of the people to be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures.” U.S. Const. amend. IV. The Supreme Court
has held that the Fourth Amendment generally imposes a warrant requirement for
searches. Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); see
Johnson v. United States, 333 U.S. 10, 13–14, 68 S. Ct. 367, 369 (1948). “A ‘search’
occurs when the government violates a subjective expectation of privacy that society
considers objectively reasonable.” Dawson v. State, 106 S.W.3d 388, 391 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) (citing Kyllo v. United States, 533 U.S. 27,
33, 121 S. Ct. 2038, 2042–43 (2001)). It has been established that warrantless
searches are “per se unreasonable under the Fourth Amendment subject only to a few
specifically established and well-delineated exceptions.” Katz, 389 U.S. at 357, 88
S. Ct. at 514. 
          One of the established exceptions to both the requirements of a warrant and
probable cause is a search conducted pursuant to consent. Corea v. State, 52 S.W.3d 
311, 315–16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (citing Schneckloth v.
Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973)). The State can
establish the lawfulness of an illegal search through bearing the burden of proving,
by clear and convincing evidence, that consent was freely and voluntarily given. Id.
at 316 (citing Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1791
(1968)). Hence, the State must show that the consent was positive and unequivocal
and not merely an acquiescence to a claim of lawful authority. Id. There must be no
evidence of coercion. Id. 
           Thus, an individual may waive his rights under the Fourth Amendment by
consenting to a search. Id. Whether consent was voluntary is a question of fact and
must be analyzed under the totality of the circumstances. Id. (citing Schneckloth, 412
U.S. at 227, 93 S. Ct. at 2047–48 and Paulus v. State, 633 S.W.2d 827, 850 (Tex.
Crim. App. 1981)).
B.      Authority to Enter 
          The Fourth Amendment protects people, not places. Katz, 389 U.S. at 351, 88
S. Ct. at 511. Indeed, courts have held that “a student who occupies a college
dormitory room enjoys the protection of the Fourth Amendment.” Piazzola v.
Watkins, 442 F.2d 284, 289 (5th Cir. 1971); see Morale v. Grigel, 422 F. Supp. 988,
997 (D.N.H. 1976) (considering dormitory room to be “a home away from home”); 
Devers v. S. Univ. & A&M Coll., 712 So. 2d 199, 204–05 (La. Ct. App. 1998) (finding
that “[a] dormitory room is a student’s house for all practical purposes, and a student
has the same interest in the privacy of his room as any adult has in the privacy of his
home, dwelling, or lodging”). In the instant matter, appellant had an expectation of
privacy in his dorm room and is thus afforded Fourth Amendment protection. In
addition, the Court of Criminal Appeals has held that “[t]he odor of marijuana,
standing alone, does not authorize a warrantless search and seizure in a home.” State
v. Steelman, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002) (analyzing warrantless entry
under Code of Criminal Procedure provisions, but applying Fourth Amendment
discussion in Johnson, 333 U.S. at 13–14, 68 S. Ct. at 369). However, the Court of
Criminal Appeals has recently held that the odor of marihuana emanating from a
home, among other things, provides police with probable cause to believe that
criminal activity is occurring inside the home. Estrada v. State, 154 S.W.3d 604, 609
(Tex. Crim. App. 2005).
          To support his contention that the R.A. entered his room unlawfully, appellant
cited a provision in the Residence Hall Contract (“Contract”) providing that, “[t]he
university reserves the right . . . to enter any room for the purpose of inspection,
repair, cleaning, inventory, health and safety hazards, or other emergencies,” and
argued that there was no evidence that the R.A. entered his room for any of these
purposes. The record supports appellant’s assertion that the R.A. entered his room
to investigate evidence of criminal activity, and not a fire.
          However, the State provided other justification for the entry. The Contract also
provides the following: The student agrees as a condition of this agreement to comply with all
University and Student Housing rules, regulations, policies and
procedural information, incorporated herein by reference to the
“University Student Handbook,” which are now in effect or are
amended, or enacted during this term of agreement.
 
Thus, appellant’s conduct in his dorm room was not only governed by the Contract,
but also by the provisions in the Student Handbook (“Handbook”). Appellant
concedes on appeal that he was subject to these provisions.
          The Handbook provides, under its Residential Life and Housing section, that
“[a]ll University of Houston residents are expected to observe local, state, and federal
laws. . . . The Handbook outlines the residents’ responsibilities as members of the
educational community.” The following behaviors are prohibited in the residential
community and are considered a violation of policy:
          I.       Alcohol/Drugs
                    1.1     Being present during or participating in the illegal use, [or]
possession, . . . of drugs prohibited under the Controlled
Substances Act of Texas. 
 
(Marihuana is a controlled substance. Tex. Health & Safety Code Ann. § 481.032
(Vernon 2003)). 
          In addition, the Handbook includes University Policies (“Policies”) under
which “[s]tudents may be subjected to searches and seizures as authorized by
university policies and federal, state, and local laws.” Further, the Policies provide
that,
 [i]n all cases involving public law, statutes, ordinances, student life
policies, or university regulations, university action may be taken. . . .
Violations occurring within the residence halls may be resolved by the
appropriate residence halls staff and/or referred to the Dean of Students
Office.
 
An R.A. is a trained resident-hall staff member who is charged with resolving such
violations in keeping with his duty to maintain community standards of behavior. 
           In maintaining such standards, the Handbook, Residential Life and Housing,
Room Inspection Procedure, states:
          1.       University officials, including residence halls staff, . . . may enter rooms
to fulfill their daily duties, in cases of emergencies, or in cases of
reasonable suspicion of activity endangering the individual or the
community.

(Emphasis added.) Appellant concedes on appeal that he was subject to this provision.
          In sum, the Handbook provides ample authority for the R.A.’s entry. Appellant
agreed to abide by university policies outlined in the Handbook when he signed the
housing Contract. The evidence supports the State’s argument that the R.A.
investigated the marihuana odor in accordance with his duties as an R.A. to monitor
the safety of the people in the dorm rooms and to investigate possible disciplinary
violations. As discussed above, appellant contracted this investigatory right to the
university. Hence, he waived any Fourth Amendment objections to the university’s
reasonable exercise of that right. See Utah v. Hunter, 831 P.2d 1033, 1037 (Utah Ct.
App. 1992) (concluding that by signing residence hall contract prohibiting the
possession or consumption of alcohol and reserving the right to enter and inspect in
order to enforce the regulations at any time “to protect and maintain the property of
the University, the health and safety of its students, or whenever necessary to aid in
the basic responsibility of the University regarding discipline and maintenance of an
educational atmosphere,” the student waived any Fourth Amendment objections to
university’s exercise of that right). The constitutionality of the policy on its face is
not at issue. 
2.       Execution of Entry Policy 
          Appellant argues that, even if the R.A. was authorized under university policy
to enter the room, he failed to follow that policy when he called police prior to 
entering the room and prior to actually seeing illegal drugs.


 However, as explained 
previously, it is the provisions in the Handbook that are incorporated into the housing
Contract, signed by appellant, that authorize residence hall staff to enter a student’s
room to investigate “any activity endangering the individual or the community.” The
Paraprofessional Staff Guide (the “Guide”) is not incorporated into the Contract. 
Hence, any violation of the Guide is an issue properly handled by the R.A.’s supervisor
and has no effect on the legality of the entry. 
           In addition, appellant asserts, 
[a]ssuming arguendo that [the R.A.] had the right to enter the room
without the police to enforce university policy, he could not give that right
to police when the primary purpose of the entry was to investigate the odor
of marihuana and to search for evidence of criminal activity. Because [the
R.A.] contacted the police once he smelled the marihuana, entered the
room with them by his side, and immediately turned over the investigation
to them, he acted in concert with the police and unlawfully delegated to
them the university’s limited right to enter and inspect dorm rooms.There is no support in the record for appellant’s argument that the R.A. opened
the door “for police,” entered the room with them “by his side,” or “immediately turned
over the investigation to them.” To the contrary, the testimony showed that the R.A.
opened the door himself and stepped into the room, while the officers waited in the
hallway. Neither the R.A. nor the officers could see appellant or his roommate when
the door was opened. At some point, appellant and his roommate moved to the doorway
and officers could then see them. The testimony showed that the officers then asked if
they could come in. Appellant concedes that appellant or his roommate invited the
officers in. Hence, the officers did not “immediately take over” the investigation; rather,
the evidence showed that the officers were there “basically at the beginning for the
safety of the R.A.” and did not become involved until they were invited in by appellant
or his roommate.
          In this question of first impression in Texas, appellant heavily relies upon
Piazzola v. Watkins, 442 F.2d 284 (5th Cir. 1971), to support his argument that the
conduct of the R.A. was unlawful. Appellant argues that searching for evidence of a
crime is unconstitutional. However, Piazzola is clearly distinguishable and is not
persuasive. There, state narcotics agents and city police requested the cooperation of
university officials in searching 6 to 7 dorm rooms in 2 different dormitories during
final exams and over a holiday break. Id. at 286. Some of the rooms were searched
more than once. Id. In each instance, there was neither a search warrant nor consent
by a resident of the room. Id. The court reasoned that it was, in essence, “a fishing
expedition.” Id. at 287. The court found that the university indeed had “broad
supervisory powers” to maintain the educational community; however, the second
search of the defendant’s room involved a greater invasion of privacy than could be
justified by the university’s supervisory interests. Id. at 289–90. Thus, the
unconstitutionality derived from the nature of the search. This was a blanket sweep
initiated by police and is distinguishable from the case at hand. 
          Here, we have a single entry by an R.A., into a specific room, based on reasonable
suspicion that a violation of university policies was in progress, and pursuant to a
specific set of policies that appellant had notice of and consented to, that charge the
R.A. with maintaining community standards and resolving violations of university
policy. While the court held in Piazzola that the university clearly had no authority to
consent to or join the police in a search for evidence of a crime, here there is no
evidence that the R.A. consented to an entry or search by the officers, or that the R.A.
joined in any such search.
          Appellant cites several cases to support his position that an R.A. may not consent
to an entry by police into a dorm room.


 However, because there is no evidence here
that the R.A. consented to allow police into the room or consented to any form of search
of the room, these cases are not dispositive.             
          Moreover, there is no evidence that the officers used coercion to gain entry to the
room. Cf. Mitchell v. State, 831 S.W.2d 829, 832 (Tex. App.—Houston [1st Dist.]
1992, pet. ref’d). No seizure occurs when police officers simply ask questions. Id. at
832 & n.3 (citing Florida v. Bostick, 501 U.S. 429, 111 S. Ct. 2382, 2386 (1991)). 
Further, the State need not prove that the one giving permission knew he had a right to
withhold his consent. Schneckloth, 412 U.S. at 226-27, 93 S. Ct. at 2047; Zepeda v.
State, 638 S.W.2d 542, 545–46 (Tex. App.—Houston [1st Dist.] 1982, no pet.).
          We hold that campus police officers did not violate appellant’s constitutional
rights when they entered appellant’s dorm room upon invitation.
 
C.      Seizure of Marihuana
          “No evidence obtained by an officer or other person in violation of any provisions
. . . of the Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.” Tex. Code Crim. Pro.
Ann. art. 38.23(a) (Vernon Supp. 2004–2005). Furthermore, “all evidence obtained by
searches and seizures in violation of the [United States] Constitution is . . . inadmissible
in a state court” via the federal exclusionary rule. Mapp v. Ohio, 367 U.S. 643, 655, 81
S. Ct. 1684, 1691 (1961). 
          Here, appellant not only consented to entry by campus police, but he voluntarily
consented to give the officers the marihuana. There is no evidence that either officer
engaged in a search of the room. Rather, Roney simply asked appellant if there was
marihuana in the room. Appellant voluntarily reached under a blanket on Marsh’s bed
and pulled out a bag containing green, leafy substance, rolling papers, and a pipe. 
Appellant admitted that he owned the contents. A defendant who voluntarily delivers
something to police cannot later complain of an illegal search and seizure. Weaver v.
State, 262 S.W.2d 510, 510 (Tex. Crim. App. 1953).
          We hold that appellant’s constitutional rights were not violated when campus
police received marihuana that appellant voluntarily relinquished. The marihuana was
lawfully obtained and appellant’s motion to suppress was properly denied.
          Appellant’s sole issue is overruled.
CONCLUSION
          We affirm the judgment of the trial court.
                                                          
                                                                                                                          
                                                         Laura C. Higley 
                                                         Justice 
 
 
Panel consists of Justices Nuchia, Hanks, and Higley.
Publish. Tex. R. App. P. 47.2(b).